STATE *ex rel. vs.* MINNETONKA VILLAGE *et al.*

Argued May 29, 1894.  Decided June 15, 1894.

No. 8761.

"Lands adjacent" in Laws 1885, ch. 145, defined.

"Any district, sections or parts of sections which has been platted into lots and blocks, also the lands adjacent thereto * * * said territory containing a resident population of not less than 175, may become incorporated as a village." Laws 1885, ch. 145. *Held,* that "lands adjacent thereto" include only those which lie so near the center or nucleus of population on the platted lands as to be somewhat suburban in their character, and to have some community of interest with the platted portion in the maintenance of a village government. The act does not authorize the incorporation of large tracts of rural territory having no natural connection with any village and no adaptability to village purposes.

Writ of ouster ordered.

Ordered that a writ of ouster issue.

Information filed in this Court March 14, 1894, by H. W. Childs, Attorney General, stating that more than thirty persons resident in the limits of a proposed village, presented to the Board of County Commissioners of Hennepin County, March 19, 1892, their petition under Laws 1885, ch. 145, as amended by Laws 1887, ch. 62, asking the Board to appoint a time and place for the electors to vote for, or against, the incorporation of the territory as a village, to be named Minnetonka. The proposed village was about seven miles long in the longest part from east to west and six miles wide from north to south at the widest part and contained over thirty square miles. The Board appointed April 26, 1892, at the Hall over the Post Office in Minnetonka Mills as the time and place for the election. There were 110 votes cast for, and 52 against, incorporation. An election of village officers was afterwards held and the persons elected have since exercised the powers of such officers. The information charged that the Laws of 1885 ch. 145, is invalid because (1st) it does not define the amount of land that may be included in such a village nor delegate this power to any subordinate officer, and (2nd) the act if valid, does not authorize the incorporation of such an amount of unoccupied rural territory as a village.

A writ of *quo warranto* was issued returnable April 3, 1894, requiring the village officers to show by what warrant they exercise the powers and franchise of such officers. They made answer stating the steps taken to incorporate under the Act. The relator replied. Andrew H. Adams was appointed referee and took the evidence offered by each party and reported the same to this court.

*H. W. Childs*, Attorney General, *Chas. E. Vanderberg, A. D. Smith* and *Rea, Hubachek & Healy,* for the State.

The Act of 1885 providing for the incorporation of villages is unconstitutional for the following reasons: 1st. Because it delegates legislative functions to thirty electors, private citizens, residing upon the lands to be incorporated. 2nd. Because it is in violation of Article III of the Constitution, distributing the powers of government. 3rd. Because it violates Article 9, § 1. 4th. Because it violates Article 1, §§ 7, 13.

A village is a political subdivision of the State, a municipal corporation, the creation of which has been entrusted by the people to the legislature only. *State ex rel.* v. *Simons*, 32 Minn. 540; *State ex rel.* v. *Young*, 29 Minn. 474; *Shumway* v. *Bennett*, 29 Mich. 451. In the Act of 1885 no single fact or thing is stated upon the existence of which the corporation is made to depend, except that the territory named must contain 175 residents. The exercise of all the important legislative functions in the formation of the village is delegated to thirty private persons.

The States which have laws similar in some respects to our own, define in some way what extent of territory may be taken. In Michigan it must not be more than one square mile. Howells Annotated Stat. § 2983. In New York, if it contain more than one square mile, it must have a population of not less than three hundred upon each and every additional square mile. Laws 1847, ch. 426. In Ohio the County Commissioners have the power to determine the extent of territory, that it is not too large nor too small. Rev. Stat. (Williams) pp. 318, 319. In Pennsylvania the Court shall exclude farming lands, if they have been included within the proposed village (borough). Brightly's Purdon's Digest p. 165. In Illinois only two square miles may be taken. Starr & Curtis Annotated Stat. p. 510. In Wisconsin, if the area is more than one half square mile

it must contain a population of at least four hundred persons upon ·every additional square mile.    Sanborn & B. Annotated Stat. p. 503. In all these and other states, additional facts and safeguards are prescribed by the law; the census must show the name of each head ·of a family and the number of persons in the family; a day is set for hearing all parties, and an opportunity is presented at each stage of the proceedings when and where parties may be heard pro .and con.

We claim that the incorporation of the respondent village was illegal and void.    1st. Because in all the immense tract of territory defined in this petition, there did not and still does not exist "any ·district, sections or parts of sections which has been platted into lots and blocks, also the lands adjacent thereto,—said territory containing a resident population of not less than 175" persons.    2d. Because the plats named in said petition are each separate and distinct from every other one, in some cases by many miles of wild and farm lands.    3d. Because there is no nucleus with which to start ·a village and such as the law contemplates for the formation of a village.    4th. Because the vast area and extent of lands absorbed by this village are not adjacent to the platted lands or to any of them.    Our chief contentions are that the unplatted lands are not adjacent to the platted lands, and that there is no one body of platted lands which, with the lands adjacent thereto, contains a resident population of 175 persons.    *Illinois Cent. Ry. Co.* v. *Williams*, 27 Ill. 48; *Toledo, W. & W. Ry. Co.* v. *Spangler*, 71 Ill. 568; *Smith* v. *Sherry*, 50 Wis. 210; *People* v. *Schermerhorn*, 19 Barb. 540; *Continental Imp. Co.* v. *Phelps*, 47 Mich. 299.

Where the State is proceeding against a *de facto* municipal corporation by *quo warranto*, and the respondent admits that it is exercising a municipal franchise, and claims the right to do so, the burden rests upon it to show a grant of power, and that it has brought itself within the prescribed legislative conditions.    It must show that it is legally established as well as organized.    *State ex rel.* v. *Parker*, 25 Minn. 215; *State ex rel.* v. *Sharp*, 27 Minn. 38; *State ex rel.* v. *Reynolds*, 61 Mo. 203; *Smith* v. *Board of Co. Comrs.*, 45 Fed. Rep. 727.

The word "adjacent" in the statute is used in the sense of contiguous and adjoining.    Remote lands having no natural adaptability

to village purposes can not lawfully be included. And where actual unity of interest is impracticable, legal unity should not be attempted, but the incongruous communities should be left to independent control. *Vestal* v. *Little Rock,* 54 Ark. 321; *State ex rel.* v. *Eidson,* 76 Tex. 302; *Ewing* v. *State,* 81 Tex. 172; *Page* v. *Board of Supervisors,* 85 Cal. 50; *People* v. *City of Riverside,* 66 Cal. 288; *State* v. *Town of Baird,* 79 Tex. 63.

*Young, Fish & Dickinson* and *Hale, Morgan & Montgomery,* for respondents.

This Act has been before the court upon various points, in the following cases; *State ex rel.* v. *Cornwall,* 35 Minn. 176; *State ex rel.* v. *Spaude,* 37 Minn. 322; *Bradish* v. *Lucken,* 38 Minn. 186; *Stemper* v. *Higgins,* 38 Minn. 222; *Baldwin* v. *Robinson,* 39 Minn. 244; *Bradley* v. *Village of West Duluth,* 45 Minn. 4; *Village of St. James* v. *Hingtgen,* 47 Minn. 521; *Village of Wayzata* v. *Great Northern Ry. Co.,* 50 Minn. 438; *Village of Buffalo* v. *Harling,* 50 Minn. 551.

Considering these frequent interpretations, the extent of such litigation, and the very large number of villages now existing under the Act, it would, at this late day, be as surprising as disastrous to destroy the legislative foundation upon which all such villages stand. But the weight of the constitutional attack is not alarming. The Legislature, in the exercise of its undoubted power to create village corporations, may leave it to the people immediately concerned, and to the local authorities, to determine for themselves, under specified conditions and on proper terms, whether or not territory of their selection shall be formed into such corporation. *State ex rel.* v. *District Court of Hennepin Co.,* 33 Minn. 235; *State* v. *Cooke,* 24 Minn. 247.

The objection chiefly argued is that the statute does not authorize the inclusion within village limits of so large a territory, nor the kind of territory embraced in this case. The fallacy of relator's argument is that each case is for the Courts to decide. That if the Judges are convinced that too much land had been included, or too much of a given kind of land, then the incorporation is void, otherwise it is valid. This is the very mistake that invalidated

Laws 1883 ch. 73, and which the present law was designed to correct. *State ex rel.* v. *Simons*, 32 Minn. 540. In *Shumway v. Bennett*, 29 Mich. 451, it is said; "The propriety of the shape or boundaries of the proposed village is often the principal thing deemed necessary to be settled by the legislature, when it submits a charter to the popular vote." Yet counsel insists that under this act, conceding it to be valid, the court is at liberty to review and overrule the action of the constituted authorities upon this very "principal thing." It is claimed in this case that the area incorporated, considering its character and occupancy, is far in excess of that contemplated by the statute. Now, suppose the commissioners had been of the same opinion, and for that reason had refused to post notices for the requested election, would the court have compelled them to do so by mandamus? If so, the relator has no case here; for in so doing, the Court must hold that the case made by the petition is within the statute. On the contrary, a refusal of the Court to grant the writ, would be equally fatal, for such refusal must rest upon the ground that the commissioners were at liberty to accept or reject in their discretion. There can be no reasonable doubt that the purpose of this Act is to leave the matter to the people immediately concerned, subject to the approval of the Board of County Commissioners. That body has general charge of county affairs. Its members are chosen for the express purpose of superintending public business of this character. They regulate the organization, boundaries, division and consolidation of towns and school districts, and in general, they represent the legislative function as applied to the details of county business. There is manifest propriety in giving to them the power to prevent the incorporation of territory which, in view of all the interests involved, ought not to be incorporated. Accordingly this Act provides that no incorporation shall be effected excepting upon petition to them; and the very term "petition" implies the power to grant or to refuse the thing prayed for.

The only substantial point made against the regularity of the proceedings is, that a large part of the area of this village is not properly urban territory; that it is farming or wild land, and is too remote from the platted nucleus of Minnetonka to be in any way tributary thereto or associated therewith. If the Legislature had

seen fit by a direct act to incorporate the same territory as a village with the same powers conferred by this general law, the courts would not have interfered. The opinion of the Legislature upon the subject would not have been open to judicial revision. The term "adjacent" as here used was not intended to prescribe any definite limit. It means such adjacent lands as the conditions of the particular case, in the exercise of a reasonable discretion, may indicate. What would be a reasonable area in one case might be too large or too small in another. The discretion to be exercised is confided, not to the Courts, but to the people immediately concerned, and to the County Commissioners as representing the local public generally.

The decision of the County Commissioners in the first instance, that the petition in question conforms to the statute, as such finding is involved in their favorable action upon it, and the decision of the voters within the district to incorporate, followed by the completion of the village organization and the election of village officers, pursuant to the statute, and the subsequent exercise by respondents of the powers thus conferred until this time, is binding upon this court. *City of Galesburg* v. *Hawkinson*, 75 Ill. 152.

MITCHELL, J. It is conceded that the respondent exists, if at all, by virtue of the petition and other exhibits attached to the information, and purporting to be proceedings under Laws 1885, ch. 145, entitled "An act to provide for the incorporation of villages," etc.

The language of the statute is: "Any district, sections or parts of sections which has been platted into lots and blocks, also the lands adjacent thereto, * * * said territory containing a resident population of not less than 175, may become incorporated as a village."

The territory claimed to have been incorporated as the village of Minnetonka lies between the western boundary of the city of Minneapolis and the eastern shore of Lake Minnetonka, and contains nearly thirty square miles, being nearly equal in area to a full government township. Within this territory there were, at the time of its alleged incorporation, seventeen or more tracts which had been platted, into lots and blocks, but these were in no way connected, but were separated, each from the other, by quite an extent of farm

or uncultivated lands; and one peculiarity of the petition is that it does not indicate which of these numerous plats was to be the nucleus of the proposed village. Many of these platted tracts are entirely vacant and uninhabited, and on most of the others there are only a very few permanent inhabitants, not sufficient to constitute a "village," in the popular and ordinary sense of the word. The only one which has inhabitants enough to constitute any considerable nucleus of either business or population is "Minnetonka Mills," situated on section 15. This contains about 20 families, and a population variously estimated from 60 to 105, and, together with the whole of sections 14 and 15, contains a population of only about 120. There are several post offices, and as many as eight railway stations, within the boundaries of the alleged village. There is a considerable number of summer cottages and boarding houses along the shore of Lake Minnetonka, but these are mainly occupied by temporary summer visitors, who have no business or other relations with "Minnetonka Mills" during their sojourn. The northwesterly part of the territory is naturally tributary to the considerable village of Wayzata, situated just outside of the respondent village; while the southeasterly portion is in like manner tributary to the village of West Minneapolis, just outside its east boundary. There are twenty three sections, within the boundaries of the corporation, which contain neither platted lands nor collections of houses in the nature of villages. The greater part of the resident population is strictly rural or agricultural, and the greater part of its territory consists of either wild lands or cultivated farms, of which there are about 150.

It is apparent that this large territory, essentially rural, has no fitness for village government, and absolutely no community of interest in respect to the purposes for which such a government is designed.

The validity of respondent's incorporation is assailed on the grounds (1) that the act is unconstitutional; (2) that the act does not authorize the incorporation of such territory into a village.

The point made against the validity of the act is that the legislature has neither itself determined how much or what character of land shall be included in a village, nor delegated the power to do

so to any proper subordinate official body, but has left it wholly to the arbitrary determination of any thirty private citizens who may sign the petition, subject only to the conditions that the territory contains a population of 175, and that there be somewhere within its boundaries a tract of land platted into lots and blocks, and that the majority of the electors, within the territory whose boundaries are thus arbitrarily fixed by the petitioners, vote in favor of incorporation.

It would be difficult to sustain the act if the word "adjacent," as used in the third section, is to be given the meaning contended for by the respondent, for under such a construction it would be left to the petitioners, subject only to the above limitations, to arbitrarily determine how much and what character of territory should be included in the proposed village. They might include a rural territory 50 or 100 miles square, provided "they did not skip over any as they advanced." But clearly this was not the intention of the legislature.

The purpose evidently was to authorize the incorporation of "villages," in the ordinary and popular sense, and not to clothe large rural districts with extended municipal powers, or subject them to special municipal taxation for purposes for which they were wholly unsuited.

A "village" means an assemblage of houses, less than a town or city, but nevertheless urban or semiurban in its character; and the object of the law was to give these aggregations of people in a comparatively small territory greater powers of self-government and of enacting police regulations than are given to rural communities under the township laws. The law evidently contemplates, as a fundamental condition to a village organization, a compact center or nucleus of population on platted lands; and, in view of the expressed purposes of the act, it is also clear that by the term "lands adjacent thereto" is meant only those lands lying so near and in such close proximity to the platted portion as to be suburban in their character, and to have some unity of interest with the platted portion in the maintenance of a village government. It was never designed that remote territory, having no natural connection with the village, and no adaptability to village purposes, should be included.

Whether the word "adjacent" is to be given a more limited and definite meaning of universal application, or whether, as is my own impression, there is no inflexible rule, except the general one already laid down, as to what lands are adjacent, and that each case will depend somewhat on its own particular facts, it is not necessary to consider in the present case. There is no difficulty in determining, as a matter of law, that this territory is not "adjacent," within any meaning of the word, and that its attempted incorporation into a village was wholly unauthorized by the act.

Let a writ of ouster issue.

BUCK and CANTY, JJ., took no part.

(Opinion published 59 N. W. 972.)