TOWN OF NORTH JUDSON v. CHICAGO AND ERIE RAILROAD COMPANY ET AL.

[No. 10,186.    Filed February 17, 1920.]

1. MUNICIPAL CORPORATIONS.—*Annexation of Territory.*—*Appeal From Board of County Commissioners*—An appeal to the circuit court may be taken from the decision of the board of county commissioners in proceeding to annex contiguous territory to a municipal corporation.    p. 552.

2. MUNICIPAL CORPORATIONS.—*Annexation of Territory.*—*Appeal to Circuit Court.*—*Amendment of Plat.*—As there is a trial *de novo* on appeal to the circuit court from the decision of the board of county commissioners in a proceeding to annex contiguous territory to a municipal corporation, the petitioner may amend the plat in the circuit court to correspond to the description, as amended, of the territory to be annexed.    p. 552.

3. APPEAL.—*Waiver of Error.*—*Objection to Name Used by Petitioner to Annex Territory.*—An objection to the name used by the petitioner, in a proceeding to annex territory to a municipal

corporation, which was not made either before the board of county commissioners or in the circuit court, is not available on appeal. p. 553.

4. APPEAL.—*Record.—Annexation of Territory.—Failure to Make Amended Petition a Part of Record.*—That an amended petition in a proceeding to annex territory is not in the record on appeal is immaterial, where the original petition is a part thereof, and the record shows the amendment that was made. p. 554.

5. APPEAL.—*Review.—Findings.—Denial of Annexation of Territory to a Municipal Corporation.*—On an appeal from a judgment denying the petition of a municipal corporation to annex contiguous territory, *held* that under the facts found there was no right of annexation. p. 554.

From Pulaski Circuit Court; *Smith N. Stevens,* Judge.

Proceedings by the incorporated town of North Judson, opposed by the Chicago and Erie Railroad Company and others, for the annexation of contiguous territory. From a judgment for remonstrators, the petitioner appeals. *Affirmed.*

*Harry C. Miller, Darrow & Rowley* and *William J. Reed,* for appellant.

*George E. Ross, Charles H. Peters* and *William Daley,* for appellees.

NICHOLS, C. J.—Appellant, under the name of the town board of the incorporated town of North Judson, filed a petition and plat for the annexation of the unplatted and contiguous territory to the town of North Judson, with the board of commissioners of Starke county, on March 29, 1916, and at the May term of the commissioners' court, after due notice had been given, the board ordered the unplatted contiguous land annexed as prayed for, and from the judgment appellees appealed to the Starke Circuit Court, from which court the case was taken on change

of venue to the Pulaski Circuit Court, where the case was tried *de novo*. Upon special findings of fact, the substance of which are hereinafter set out, the court stated its conclusions of law in favor of appellees and rendered judgment accordingly. After a motion for a new trial, which was overruled, appellant appeals. The errors assigned are that the court erred in overruling appellant's motion to dismiss the appeal from the board of commissioners, in overruling the motion for a new trial, and in stating its conclusions of law.

Appellant contends that the court erred in overruling its motion to dismiss the appeal from the board of commissioners for the reason that the court 1. had no jurisdiction to try the case, the question involved being solely for the board of commissioners, from which there was no appeal. Appellant cites *Trustees, etc.* v. *Manck* (1871), 35 Ind. 51, and other cases of similar decision. But these cases were expressly overruled in *Grusenmeyer* v. *City of Logansport* (1881), 76 Ind. 549. *Paul* v. *Town of Walkerton* (1898), 150 Ind. 565, 50 N. E. 725, cited by appellant, is against its contention. See, also, *Patterson* v. *Town of Ft. Branch* (1916), 62 Ind. App. 333, 113 N. E. 319. The motion to dismiss the appeal from the board of commissioners was properly overruled.

Appellee contends that the board of commissioners had no jurisdiction for the reason that there was no plat filed. In this they are mistaken. The petition refers to the plat as "Exhibit A" and the 2. same was filed with the petition. It was amended in the circuit court to correspond to the description as amended, but, as the case was tried *de novo*, this was permissible. *Wilcox* v. *City of Tipton* (1896), 143 Ind. 241, 42 N. E. 614.

NOVEMBER TERM, 1919.          553

Town of North Judson *v.* Chicago, etc., R. Co.—72 Ind. App. 550.

Appellee says that the record does not show that any petition signed by the trustees, or any person for them, was ever filed with or presented to the board of commissioners. In the body of the petition it appears that it was by the town board of the incorporated town of North Judson composed of Alfred A. Sphung, Charles A. Moderhack, Otto V. Kriss. The petition was verified by these parties as trustees. It was indorsed, "In the matter of the annexation of contiguous and unplatted territory to the incorporated town of North Judson," and was carried substantially by this title through the whole proceeding. It is provided by §8899b Burns 1914, Acts 1909 p. 449, that when any town shall desire to annex contiguous territory thereto not platted or recorded, the trustees thereof shall present to the board of county commissioners the petition, and again by §8993 Burns 1914, Acts 1905 p. 219, §19, it is provided that the president and trustees of such town and their successors in office shall constitute a body politic and corporate by the name of the town of ......, according to the name of such town, and by such name shall have authority to prosecute and defend such suits to which such town is a party.

There was no objection made to the name used by the petitioner, either before the board of commissioners or the circuit court, where it should have been made, if at all. *Sinton* v. *Steamboat R. R. Roberts* (1874), 46 Ind. 476. In view of this failure to raise the question we hold that there is no merit in the objection first made in this court. The petition will be considered from the beginning as that of the town of North Judson and the words "town board of" as mere surplusage. *Yocum* v. *Waynesville* (1866), 39

554 APPELLATE COURT OF INDIANA,

Town of North Judson *v.* Chicago, etc., R. Co.—72 Ind. App. 550.

Ill. 220; *Shoudy* v. *School Directors* (1863), 32 Ill. 290; *Botkins* v. *Osborne* (1866), 39 Ill. 101.

Appellee next objects that the amended petition and plat, which were the basis of this proceeding, were not made a part of the record, and that without 4. them the appeal cannot be maintained. We are not unmindful of the rule that, when a pleading is amended, the amended pleading, and not the original, is a part of the record on appeal, but in this case the original petition as filed before the board of commissioners is in the record, and the only amendment made thereto was that of the change or correction in the description of the real estate which it is sought to annex. The change or correction that was made fully appears by the record, both by the petition and order making the same, and by the special findings of fact. We are therefore fully informed as to the averments of the amended petition. This is sufficient.

The substantial facts as appear by the findings are as follows: The town board of North Judson, by resolution duly passed, authorized the filing of 5. a petition with the board of commissioners of Starke county for the annexation of unplatted lands described in the petition and giving personal notice to all the residents affected by such proceedings and notice by publication to nonresidents. The description as to the land proposed to be annexed is quite long and for the purpose of this decision need not be set out. It is sufficient to say that the territory petitioned to be annexed embraced about 1,400 acres of land and surrounds the town of North Judson except upon the southwest side. After the hearing by the board of commissioners of Starke county, and after appeal and change of venue to the Pulaski

Circuit Court, and during the trial in that court, the petitioners were permitted to amend the description of the land in the petition and on the plat. A copy of the verified plat as it was before said change in description is set out in the findings and the change made therein, as well as in the petition. By the order of the board of commissioners, the petition to annex was sustained. From this order an appeal was taken to the Starke Circuit court, and change of venue from that court to the Pulaski Circuit Court as aforesaid. The town of North Judson is an incorporated town in Starke county, Indiana, with a population of about 1,300, has improved streets of brick and gravel, electric lights that light the streets and alleys under a contract with a public service corporation. Seventy-five per cent. of all streets are lighted all night from sunset to sunrise under the Philadelphia moonlight schedule. There are four railroads passing through the corporation, as it now exists, and four passenger and freight depots where passengers and freight are received and discharged. There are fifty-one business houses outside of the railroads and railroad depots, and the central portion of the business district of said town has cluster electric lights on each corner and midway between the blocks which are maintained by the town of North Judson. There are various kinds of business conducted in the town such as are usual and ordinary in a town of the population of North Judson. There are three meat markets, general stores, grocery stores, restaurants, hotels, a bank, postoffice, picture shows and, at the time of the filing of this petition, saloons. The area of the incorporated town is 610 acres, built up of business houses, residences, public schools, churches, parochial schools,

cemetery, railroad right of ways, lumber and coal yards, and some of the area is unplatted in said town and owned by individuals who occupy the same for various uses; and some of the territory is occupied by railroad yards, and other uses which the railroads have applied to the territory. The town maintains a commissioned high school, which is a two-story brick building, 60x60, with four rooms upstairs and four rooms downstairs, together with a superintendent's office. The number of pupils in attendance in the school is 325. Said school building is too small to accommodate the number of children in attendance, so that the school board has to and does use the town hall to take care of the children that cannot be accommodated in the school building. The town hall, in addition to being used for school purposes, is used for public meetings of various kinds, meetings of the town board, all in the same room as the school pupils. In addition to the public schools there are two parochial schools in the town, one a Catholic school with 105 pupils, and a German Lutheran school of forty pupils. The town has a voluntary fire department with ten active firemen. The department is equipped with a hook and ladder wagon or cart, gas engine water pump, and a double chemical engine of forty-five-gallon capacity. The town has no waterworks or reservoir so that the gas engine can be used for the extinguishment of fires in the town. It also contains within its present boundary 850 lots, thirty-five out-lots, fifteen acre lots, and about 200 additional acres, now used as farm lands, and also occupied for right of ways for the four said railroads. The valuation of the taxable property in the town for 1916 was $433,760, and the total debt of the municipal corpora-

tion was about $8,000, and the total debt of the school corporation for the town of North Judson was $7,500. The tax levy for the town was fifty cents for general purposes, thirty-five cents for light contract for streets, ten cents for bonds, seven cents for bond interests, and thirty cents for street intersections, making a total of $1.57 on the $100 valuation for town tax. The levy for school purposes for the town for 1916 was fifty cents for tuition, and fifty cents for special, and seventeen cents for bond, and five cents for vocation, making a total of $1.22 on the $100 valuation. The town has two police officers, a marshal, who patrols days, and a policeman or night watchman, who works nights. The Chicago and Erie Railroad Company and the P. C. C. and St. L. Ry. Co. has a large number of railroad men employed, who reside along the right of way of said railroad in box cars. Said employes are foreigners, principally Italians, Sicilians and Greeks, and said railroads frequently request police protection from the town of North Judson, and also to look after a large number of tramps who are thrown off trains by the officers and special agents of the railroad company in and about the town of North Judson. Nearly all of the trains stop at North Judson, both freight and passenger, on account of intersecting with other railroads, and for the purpose of taking on coal and water. The character of the soil upon which the town is built is of a sandy nature, and the sand extends from the surface down about thirty feet before clay is reached, and water is reached by driving a pipe from three to ten feet below the surface, and the main source of the water supply for the inhabitants of said town for drinking and culinary purposes is obtained in this manner.

There are about 300 wells in and about said town. There is no sewer system and there are about 300 privy vaults constructed in and about the town, all open at the top and bottom, uncemented. The territory proposed to be annexed to the town is adjacent and contiguous to the present corporation limits, is unplatted, and the character of the soil of the unplatted territory proposed to be annexed is of similar character to the lands incorporated in the present corporation. The proposed territory to be annexed is inhabited by truck farmers, farmers, dairymen, florists, professional men and laborers, who work in said town and deliver their products to the inhabitants thereof. Some of the inhabitants of the unplatted territory adjacent and adjoining the town are merchants, railroad employes and railroad officers. There are 133 inhabitants in said unplatted territory and thirty-two residences in various parts thereof. There are forty pupils attending the schools of North Judson who reside in the territory proposed to be annexed. The dairymen deliver and sell milk to the citizens of North Judson, and in so doing use the paved streets, lights, police and police protection of said town. All of the residents of said district trade at the above stores, attend church, picture shows and public entertainments in town, and use the lights lighting the streets in going to and from the depots after sunset and before sunrise. All the lands proposed to be annexed can be platted into lots, and considerable territory proposed to be annexed has been sold off in acre or larger tracts and subdivided into fractional parts of quarter sections upon which there are built houses. Some of the streets and alleys of the town abut with the dead ends up against the

NOVEMBER TERM, 1919.        559

Town of North Judson *v.* Chicago, etc., R. Co.—72 Ind. App. 550.

proposed territory to be annexed, and if extended into the proposed territory would accommodate the public. A sewer system cannot be furnished to the town and proper outlet obtained without crossing the proposed territory and improving the same. The valuation of the proposed territory was about $200,000 in March, 1917, and the valuation of the township in which the town is located was in March, 1916, $1,389,-720. The school corporation cannot enlarge the school buildings to accommodate the children who are in attendance without an expense exceeding the two per cent. inhibition. The town cannot put in waterworks without greatly exceeding the constitutional limitations, including its present indebtedness. There is now within the corporation limits of said town 1.1 mile of the right of way of the Pennsylvania Railroad Company and in the proposed annexed territory there is an additional 1.35 mile of said right of way. There is now within the corporate limits of said town 1.1 mile of the right of way of the Erie Railroad Company and in the proposed annexed territory there is an additional 1.1 mile of said right of way. There is now within the corporate limits of said town 1.05 miles of the right of way of the C. I. and S. R. R. Company, and in the proposed annexed territory there is an additional 1.1 mile of said right of way. There is now within the corporate limits of said town .9 mile of the right of way of the C. and O. R. R. Company, and in the proposed annexed territory there is an additional one mile of said right of way. The remonstrator Gust E. Long owns sixty acres off of the north end of the northwest quarter of section 17, township 32 north, range 3 west; Charles M. Cook, the north half of the northeast quarter of section six;

560    APPELLATE COURT OF INDIANA,

Town of North Judson *v.* Chicago, etc., R. Co.—72 Ind. App. 550.

teen, township 32 north, range 2 west; William H. Bunge, 150 acres in the west half of section 17, township 32 north, range 2 west; Hez P. Schuyler, the northwest quarter of the northeast quarter of section 21, and all south of the Erie Railroad in the southeast quarter of section 16, all in township 32 north, range 2 west. Said lands are partly high sand and partly swamp lands, and all of which are used for farming and grazing purposes only; upon which said lands are raised ordinary farm crops, and the remonstrator Schuyler operates a dairy upon his lands.

It is to be observed that the town of North Judson contains within its present boundaries 850 lots, thirty-five outlots, fifteen acre lots, and about 200 additional acres which are now used as farm lands and for the rights of way of the respective railroads. It does not appear by the finding whether the outlots and tracts of land are occupied by dwelling houses or not, but it does appear by the findings that there are fifty-one business houses, and 358 residences, making a few more than 400 lots that are occupied by some kind of buildings. Even though these buildings occupy the lots, outlots, etc., mentioned above, we still have a surplus of 500 vacant lots which are not used for building purposes. In addition to this there are 200 acres of land now used for farm lands which may also be platted into lots and used for building purposes. In the case of *Harris* v. *Martindale* (1908), 42 Ind. App. 633, 86 N. E. 494, the court said: "But such lands should be contiguous to some portion of the town, * * * and should be salable in smaller lots or parcels as town property, or valuable by reason of their adaptability to town uses, or requisite or desirable to furnish premises for business or dwell-

NOVEMBER TERM, 1919.    561

Town of North Judson *v.* Chicago, etc., R. Co.—72 Ind. App. 550.

ing-houses for the inhabitants, as in the case of a growing town, or be necessary for a proper town purpose, as for extension of streets, or for sewer, light, gas or waterworks system, or other public utility, or other necessary demands of the town.'' It seems to us that, with the surplus of lots, tracts and farm lands within the present boundaries of the town, the territory which it is proposed to annex is not necessary because of any of the conditions mentioned in that case. It does not appear that any of the territory which it is proposed to annex has been platted into town lots; to the contrary, it appears by the finding that it consists of unplatted territory, and that upon the whole tract of 1,400 acres proposed to be annexed there are but thirty-two residences and 133 inhabitants. A reference to the plat discloses that there are no small tracts of real estate embraced within the territory which it is proposed to annex. The land of the remonstrator Gust E. Long which it is proposed to annex consists of sixty acres of land which is not contiguous to the present boundaries of the town, and, as far as appears by the plat, there are no lots or streets intervening between it and such town. Such sixty-acre tract is used for farming purposes. The land of the remonstrator William H. Bunge consists of 150 acres of farm land. The land of Hez P. Schuyler, as appears by the plat, consists of about sixty acres used for farm, grazing and dairy purposes. We do not see how it can be said that any of these remonstrators occupying lands for farming purposes have need of town government, and it certainly does not appear that the town is in need of the lands for municipal purposes.

In the case of *Morford* v. *Unger* (1859), 8 Iowa 82,

94, the court said: "The extension of the limits of a city or town, so as to include its actual enlargement, as manifested by houses and population, is to be deemed legitimate exercise of legislative power. An indefinite or unreasonable extension, so as to embrace lands and farms at a distance from the local government, does not rest upon the same authority. And although it may be a delicate, as well as a difficult, duty for the judiciary to interpose, we have no doubt but strictly there are limits beyond which the legislative discretion cannot go." Again in the same case speaking with reference to one of the remonstrators the court said: "He does not desire to lay it off into city lots, but desires to use it as farming land. It is idle to say that the protection afforded by the city authority, or the privilege of voting at the city elections, furnishes a just equivalent for the burdens imposed upon him in the shape of taxes, by the city; and the attempt to extend its jurisdiction over him and his property, must be regarded as an attempt to take private property for public use, and within the prohibitory clause of the constitution."

In the case of *State, ex. rel.* v. *Minnetonka Village* (1894), 57 Minn. 526, 533, 59 N. W. 972, 974, 25 L. R. A. 755, 759, the court said: "The law evidently contemplates, as a fundamental condition to a village organization, a compact center or nucleus of population or platted lands; and, in view of the expressed purposes of the act, it is also clear that by the term 'lands adjacent thereto' is meant only those lands lying so near and in such close proximity to the platted portion as to be suburban in their character, and to have some unity of interest with the platted portion in the maintenance of a village government."

NOVEMBER TERM, 1919. 563

Town of North Judson v. Chicago, etc., R. Co.—72 Ind. App. 550.

The note to this case furnishes additional authorities.

In the case of *State, ex rel.* v. *McReynolds* (1875), 61 Mo. 203, the court holds that, where the order of incorporation includes a large tract of farming land, it is without jurisdiction and void, that the officers of the town or village have no authority to act even within the proper limits thereof. That case involved the construction of statutes not essentially different in principle from the statutes of this state, and the territory involved included 1,200 acres, of which 900 acres was farming land, and about 300 acres was included in the town and additions thereto, and relief was granted against the incorporation of the farming lands.

In the case of *City of Covington* v. *Southgate* (1854), 15 B. Mon. (Ky.) 491, Southgate sought to recover against the city certain taxes which he had been compelled to pay on 160 acres of land which he owned, and which without his consent had been included within the city limits by act of the legislature. The land was used exclusively for agricultural purposes and the boundary of the city adjoined it. The court by Chief Justice Marshall, said: "There was no legitimate necessity of the city, which required that this portion of Southgate's land should, at the date of the act which the city procured without and against his consent, or should, even at this time, be included within its boundary. There is little reason to apprehend that when the city actually grows up to the land now in question, the proprietor, whoever he may be, will withhold it from the necessities of a growing population." The court further said: "The only apparent purpose to be affected by including his land within the city against his consent is that of subjecting it to taxation for the benefit of the city, and with-

out any advantage to him.'' And it was held that the case must be regarded as an attempt to take private property for public use in the form of taxation under color of extension of the boundaries of the town. See, also *Cheaney* v. *Hoosier* (1848), 48 Ky. 330, and *Bradshaw* v. *City of Omaha* (1871), 1 Neb. 16.

While it is our opinion that the facts in such cases could be more safely determined by the board of commissioners, yet it is clear that under the law of this state there is a right of appeal from such board to the circuit court, and that in that court the cause must be tried *de novo*. The circuit court having found the facts as above set out, upon the facts so found we must hold that there was no right of annexation of the territory involved.

The judgment of the trial court is affirmed.