IN THE MATTER OF THE INCORPORATION OF THE VIL-
LAGE OF LOCH ARBOUR.

APPEAL OF THE TOWNSHIP OF OCEAN IN THE COUNTY
OF MONMOUTH, A MUNICIPAL CORPORATION, AND
PATRICK G. STRANO, OBJECTORS-APPELLANTS.

STATE OF NEW JERSEY, INTERVENOR.

Argued September 30, 1957—Decided November 4, 1957.

Mr. *William J. O'Hagan* argued the cause for objectors-appellants (*Messrs. Stout and O'Hagan,* attorneys; *Mr. Sidney Hertz,* on the brief).

Mr. *William S. Myers* argued the cause for applicants-respondents (*Messrs. Hannoch, Weinstein, Myers & Stern,* attorneys).

*Mr. Christian Bollermann,* Deputy Attorney-General, argued the cause for intervenor State of New Jersey (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey).

The opinion of the court was delivered by

FRANCIS, J. The Township of Ocean in the County of Monmouth and Patrick G. Strano, a resident taxpayer, sought a review of an order of the County Court directing the holding of a special election under *N. J. S. A.* 40:157–1 *et seq.* The purpose of the proceeding there was to have the electors who were qualified to vote decide whether the proposed Village of Loch Arbour should become incorporated as an individual municipal entity and thus separated from the township. The plebiscite was held and the majority of the persons who cast ballots approved the incorporation. Subsequently a notice of appeal was filed in the Appellate Division and we certified in accordance with *R. R.* 1:10–1.

The attack on the County Court's action is predicated on two grounds: (1) *N. J. S. A.* 40:157–6 is fatally defective because it omits to specify the persons who are qualified to vote in such an election, and (2) the entire statute, *N. J. S. A.* 40:157–1 to 15, inclusive, is unconstitutional because "it creates an illusory classification and attempts to regulate the internal affairs of municipalities in violation of Article 4, Section 7, Paragraph 9, of the Constitution."

Section 1 of the act provides:

"The *inhabitants* of any township * * * may become incorporated as a village by complying with the provisions of chapters 157 to 159 of this title (§ 40:157–1 *et seq.*) but no village shall be so incorporated which shall not contain at least three hundred inhabitants and if the territory included in such proposed village should exceed one square mile in area it shall contain three hundred inhabitants for every additional square mile or fraction of a mile of area." (Emphasis added.)

The proceeding to accomplish the incorporation is required to be instituted by application in writing to the County Court of the county where the proposed village is situated. The moving papers must set forth the name and boundaries of the new municipality and must contain the signatures of

persons owning at least one-fifth in value of the taxable real estate within its limits, as shown by the assessor's duplicate for the last preceding annual tax levy. *N. J. S. A.* 40:157–2. Thereafter the court fixes a hearing date, notice of which is required to be posted ten days prior thereto in five of the most public places in the proposed village, and published in a designated newspaper. *N. J. S. A.* 40:157–3. If the court determines on the return date that the conditions prescribed by sections 1 and 2 have been met, he "shall" call a special election to be held at a convenient place within the described village. *N. J. S. A.* 40:157–4, 5. The result of the election is reported to the court and if the majority of the votes cast are for incorporation, upon his filing of a certificate to that effect the territory becomes an incorporated village. *N. J. S. A.* 40:157–7, 10.

In this instance, an application in proper form was filed with the County Court seeking the incorporation of the Village of Loch Arbour, to consist of an area of .08 square miles and containing 335 inhabitants. On the hearing date appellants appeared and objected unsuccessfully to the requested election for the reasons which are the subject of this appeal. Thereafter, the election was held and (we shall assume for the purpose of determining the merits of the controversy presented by the parties) the balloting was limited to legally qualified voters who resided within the boundaries of the new village; residents of the remainder of the Township of Ocean were excluded.

## I.

### (a)

The qualifications to vote prescribed by the statute.

 It is true that none of the sections of the act specifies in so many words the persons who may participate in the voting. However, it is recognized as a fundamental principle of construction that a statute often speaks as plainly by inference as by express words. Matters which

are so clearly implied are considered an integral part of the enactment itself. *Brandon v. Montclair*, 124 *N. J. L.* 135, 143 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940).

▉▉ In the present case, resort to the various sections of the law leaves no doubt as to the legislative intention. Section 1 says that the "inhabitants" of part of a township may become incorporated as a village. The significance of that word is inescapable. An inhabitant in the generally accepted connotation is one who actually and permanently resides in a given place and who has his domicile there. *Black's Law Dictionary* (*4th ed.* 1951), *p.* 921; "one who dwells or resides permanently in a place, as distinguished from a transient lodger or visitor; * * * it ordinarily implies more fixity of abode than resident. * * * In-habitant, the general term, implies permanent abode." *Webster's New International Dictionary* (*2d ed.*); *State v. Ross*, 23 *N. J. L.* 517, 520, 521 (*Sup. Ct.* 1852); *State v. Deshler*, 25 *N. J. L.* 177 (*Sup. Ct.* 1855); *State v. Casper, Collector*, 36 *N. J. L.* 367, 368 (*Sup. Ct.* 1873); *Sprague v. Sprague*, 131 *N. J. Eq.* 104, 109 (*E. & A.* 1942). Thus, the potent implication is that the Legislature authorized the permanent residents of the incipient village to seek the election. But which inhabitants have the capacity to vote? The answer is supplied by section 6, *N. J. S. A.* 40:157-6, which directs that "The election shall be conducted, as nearly as may be, in accordance with the general laws relating to elections." In the face of this mandate, it would be sheer sophistry to argue that the Legislature did not mean legal voters as defined by the Constitution, *Article* II, *paragraph* 3, and the General Election Law, *N. J. S. A.* 19:4-1.

(b)

Territorial limitations on the right to vote.

The problem at this juncture is whether the entire voting populace of the Township of Ocean or merely that portion

of the electorate residing within the geographical boundaries of the new village has the right of suffrage in the special election. Here again, although the lawmakers failed to use precise words, the intention emerges unequivocally from a variety of sources.

The application for the special election must be signed by persons owning at least one-fifth in value of the taxable real estate *"in the limits of the proposed village." N. J. S. A.* 40:157–2. Notice of the hearing in the County Court is required to be posted in five of the most public places *"within the proposed village limits,"* the election is to be held at *"a convenient place within the proposed village,"* and the notice thereof is to be posted "in five of the most public places *within the proposed village limits," N. J. S. A.* 40:157–3, 5; the court cannot appoint election officers unless they are legal voters *"in the proposed village," N. J. S. A.* 40:157–6.

These conditions point only in one direction, namely, that the election is to be held within the boundaries of the proposed village and that participation is to be limited to inhabitants who are qualified electors residing in that area. A particularly strong circumstance is the mandate that the voting must take place at a convenient place within the proposed village. It was conceded at the oral argument that there are seven election districts within the township. See *N. J. S. A.* 19:4–1 and 5. If the intention was to open the balloting to the entire township, the unlikelihood of the restriction to the single district within the seceding village is quite apparent.

## II.

The constitutional validity of the classification established by *N. J. S. A.* 40:157–1 *et seq.*

In approaching a problem such as this, courts always recognize a strong presumption of constitutionality; doubts are resolved in favor of conformity with the organic law, and if the statute under attack admits of two constructions,

one of which will render it invalid and the other valid, the interpretation sustaining constitutionality will be adopted. Added force is given to these basic concepts by the further policy of our law not to invalidate a statute which has been in force without substantial challenge for many years, unless its unconstitutionality is obvious. *Brown's Estate v. Town of Union*, 62 *N. J. L.* 142 (*Sup. Ct.* 1898); *O'Banner v. Pendlebury*, 107 *N. J. L.* 245, 247 (*E. & A.* 1931); *Gibraltar Factors Corp. v. Slapo*, 23 *N. J.* 459, 463 (1957).

Appellants argue that *N. J. S. A.* 40:157–1 conflicts with *Article IV, Section VII, paragraph* 9(13) of the 1947 *Constitution,* which proscribes the passing of any private, special or local law *regulating the internal affairs of municipalities* formed for local government and counties, "except as otherwise in this Constitution provided." Respondent concedes that the statute was not adopted as a private, special or local law, and that conformity with the Constitution depends entirely upon its character as an enactment operating generally upon a class of municipal corporations which may be segregated from other classes for individual treatment and regulation.

At the outset it should be noted that the act in question was originally promulgated in 1891 (*L.* 1891, *c.* 22) and was brought into the Revision in its present form in 1937. Thus the issue now raised should be tested in relation to the Constitution of 1844 (as amended in 1875; Proclamation, September 28, 1875), rather than that of 1947. *Washington National Ins. Co. v. Board of Review*, 1 *N. J.* 545 (1949). On the subject under discussion, the earlier organic law banned the passage of any private, local or special law "regulating the internal affairs of *towns* and counties," and ordained that only general laws should be employed in that field. *Article IV, Section VII, paragraph* 11.

However, use of the words "towns" in the 1875 amendment and "municipalities" in the document of 1947 represents a difference in form and not in substance. It has long been the law of New Jersey that "town" as used

in the 1844 Constitution is a generic word signifying municipal corporation generally. *Van Riper v. Parsons,* 40 *N. J. L.* 1 *(Sup. Ct.* 1878); *Brown v. Town of Union, supra; Hermann v. Guttenberg,* 63 *N. J. L.* 616 *(E. & A.* 1899); *McQuillin, Municipal Corporations,* § 2.51. Actually, therefore, in its substantive aspects, the question for our consideration is the same irrespective of which Constitution provides the test.

The village as a separate municipal unit, both unincorporated and corporate, has had a long period of acceptance in the law. It existed in our State at common law as an individual entity or class prior to the Constitution of 1844. *Hermann v. Guttenberg, supra,* 63 *N. J. L.* at *page* 621; and see *Broking v. Van Valen,* 56 *N. J. L.* 85 *(Sup. Ct.* 1893); *L.* 1860, *p.* 234. The definition has been variable throughout the country. 92 *C. J. S. p.* 1011. And see *Town of Enfield v. Jordan,* 119 *U. S.* 680, 7 *S. Ct.* 358, 30 *L. Ed.* 523 (1887); *State ex rel. v. Village of Minnetonka,* 57 *Minn.* 526, 59 *N. W.* 972, 25 *L. R. A.* 755 *(Sup. Ct.* 1894); *Supervisors of Manheim Tp. v. Workman,* 154 *Pa. Super.* 146, 35 *A. 2d* 747 *(Super. Ct.* 1944); *State ex rel. Burnquist v. Village of St. Anthony,* 223 *Minn.* 149, 26 *N. W. 2d* 193 *(Sup. Ct.* 1947); 37 *Am. Jur., Municipal Corporations* § 5. Our research has disclosed no specific definition of the unincorporated village prior to 1891, beyond statements that it existed as an aggregation of inhabitants and houses, *Bellis v. Flemington,* 69 *N. J. L.* 349 *(E. & A.* 1903), or "a small town," *Hermann v. Guttenberg, supra,* 63 *N. J. L.* at *page* 622. But it received specific acknowledgment as a separate class of governmental unit in the 1844 Constitution, *Article* I, *Section* 19; *Boorum v. Connelly,* 66 *N. J. L.* 197 *(E. & A.* 1901); *Raymond v. Township of Teaneck,* 118 *N. J. L.* 109 *(E. & A.* 1937); *Koons v. Atlantic City,* 134 *N. J. L.* 329, 332 *(Sup. Ct.* 1946), affirmed 135 *N. J. L.* 204 *(E. & A.* 1947).

The term "village," as a local political subdivision, was defined legislatively for the first time by *L.* 1891, *c.* 22; *N. J. S. A.* 40:157–1, as a unit containing at least 300

inhabitants residing within an area of one square mile or less, with the additional requirement that if it should exceed that area it should contain 300 inhabitants for every additional square mile or fraction of a square mile. *Long Branch Commission v. Dobbins,* 61 *N. J. L.* 659, 661 (*E. & A.* 1898). And provision was included for its own individual type of government, namely, a board of five trustees, one of whom should be designated as president. *N. J. S. A.* 40:158–2. Shortly thereafter the village incorporation was described judicially as being of the lowest grade of municipal government, conferring the most limited powers, ranking below the borough or the town, but whose powers, within the limits of the statute, are as amply protected as those of a city. *Broking v. Van Valen, supra,* 56 *N. J. L.* at *page* 95; but *cf. State v. Borough of Clayton,* 53 *N. J. L.* 277, 279 (*Sup. Ct.* 1891).

Townships represent a proper classification within the constitutional mandate, *Boorum v. Connelly, supra,* 66 *N. J. L.* at *page* 202, and the legislation here involved deals with all such governmental entities uniformly. The village governments to be partitioned from the township, as has already been mentioned, have express constitutional sanction as a proper and separate classification. In this connection the language of the Court of Errors and Appeals in *Boorum v. Connelly, supra,* is significant:

"These rules for determining the constitutionality of acts of the legislature, relating to the internal affairs of municipalities, apply only to statutory classifications which are adopted by the legislature to answer some purpose not within the range of the common-law classifications of counties, cities, boroughs, towns, townships, and villages.

Legislation applicable to all the counties, or all the cities, or all the boroughs, towns, townships, or villages, in this state, is not subject to the principle which has been mentioned, for the reason that they are common-law classifications recognized by the constitution."

And see, *Raymond v. Township of Teaneck, supra,* 118 *N. J. L.* at *page* 111.

Villages, *eo nomine,* having been said to represent a proper constitutional classification it was strongly suggested in *Hermann v. Guttenberg, supra,* 63 *N. J. L.* at *pages* 623, 624, 626, that the Legislature may constitutionally provide for their creation as such, so long as the enactment seems to be a *bona fide* attempt to do so consistently with the common law notion of the village and its form of government. And it was said also that:

> "The question, therefore, is settled that it is for the legislature, not the courts, to characterize the municipalities of the state; and the courts cannot inquire whether a municipality or class of municipalities is titular only. The classification of the legislature in that regard is conclusive." (63 *N. J. L.* at *page* 625)

But we need not deal with the problem within such a limited context. Classification by population and territorial area, as provided for in the statute before us, is recognized as satisfying the constitutional requirement for generality. *State v. Borough of Clayton, supra,* 53 *N. J. L.* at *pages* 281, 282. Acts designed to make possible the establishment of distinct municipalities by such means are valid as general laws so long as they operate uniformly on all members of the class and bear a reasonable relation to the necessities and proprieties of the various grades of municipal government. *Koons v. Atlantic City, supra,* 134 *N. J. L.* at *page* 333; *Lewis v. Jersey City,* 66 *N. J. L.* 582, 587 (*E. & A.* 1901); *Sutherland, Statutory Construction* (*3d ed.* 1943) § 2109, at *p.* 32.

It is common knowledge that the complexity of community regulation and government increases with the growth of population. This factor has always been considered to be one of the justifications for classification of municipalities according to population. *Sutherland, supra,* at *p.* 39.

Townships were incorporated in New Jersey as long ago as 1798 (*Paterson's Laws, p.* 276). To this day they have a simple form of government by committee. *N. J. S. A.* 40:145-2 *et seq.* The act of 1798 reveals that many of

them were incorporated simply by reference to their names; nowhere were their boundaries defined or the number of their inhabitants mentioned. Obviously, many of them were sprawling areas (note the inclusion of Newark, Elizabeth and Hackensack) of limited population. As they advanced in numbers of inhabitants and physical development, problems of regulation and control became more complicated. As a result the need for either higher and better forms of government or for partition into smaller governmental units became apparent. And the Legislature responded by undertaking to establish within the limits permitted by the Constitution general classifications, usually according to population and sometimes according to both population and area, within which various forms of government might be utilized. Some townships were enabled to pass to a higher form, and others were authorized to be partitioned on the bases of population and territorial expanse. This concept of classification is reflected in *In re Haynes,* 54 *N. J. L.* 6, 28, 29 (*Sup. Ct.* 1891), where the court declared that it is "little more than saying that the swaddling bands of the infant are not the fit habiliments of the man."

In dealing with the constitutional propriety of such enactments, the courts acknowledge a wide area of discretion in the Legislature, *Devlin v. Cooper,* 125 *N. J. L.* 414, 417 (*E. & A.* 1940) ; *Raymond v. Township of Teaneck, supra; State v. Borough of Clayton, supra;* and

"Whether the basis of classification is wise or judicious, or whether it will operate as fairly as some other basis that might be adopted, is a question for the legislature, and not for the courts. The extreme limit of our inquiry in this direction is, does population bear any reasonable relation to the subject to which the legislature has applied it; is it germane to the law?" *Paul v. Gloucester County,* 50 *N. J. L.* 585, 592 (*E. & A.* 1888).

The matters outlined above point the way to the proper conclusion in the present case. The township is an ancient and independent class of municipality, having been accepted as such at common law and under the Constitution. It is constitutionally valid for the Legislature to provide

for the partitioning and the incorporation as a borough (a higher form of government) of a portion of any township not exceeding four square miles in area and containing a population not exceeding 5,000 persons. *State v. Borough of Clayton, supra.* The statute applicable here obviously resulted from a decision by the Legislature that when the number of inhabitants residing within less than a square mile of a township increases to at least 300, efficiency of government warrants the classification of such areas and such small and relatively compact groups as separate units to be governed by a distinct, though lower, type of home rule, namely, the village form. As a constitutionally recognized scheme of government, that form seems clearly appropriate for the specified population unit when localized as described. And we do not think it can be said to the degree necessary to warrant a judgment of violation of the Constitution that the classification does not bear a reasonable relation to the necessities and characteristics of that form of government. The wisdom of the statute, even in the light of present day conditions, is not for us to determine; that problem is one of legislative policy.

Moreover, we cannot overlook the fact that the law under attack has been in effect since 1891 and that a number of villages were formed under its provisions. For example, see *Bellis v. Flemington, supra; Broking v. Van Valen, supra.* Although most of them have since moved on to a higher form of government, nevertheless at this late date only the clearest demonstration of illusory classification and consequent conflict with the Constitution would justify the invalidation of such a long lived statute.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and FRANCIS—6.

*For reversal*—None.