EDITH H. GRUDNOSKY, SUBSTITUTED FOR WALTER H. GRUDNOSKY, v. PETER BISLOW AND OTHERS.

88 N. W. (2d) 847.

March 7, 1958—Nos. 37,244, 37,245, 37,246, 37,247.

*M. Albert Henry,* for appellants.
*Roger J. Hargrave* and *Cohen, Kaner & Dubow,* for respondent.

Murphy, Justice.

We are presented here with four appeals from judgments entered by the District Court of Lake County against four members of the city council of the city of Two Harbors. In these actions the plaintiff, a resident taxpayer of Two Harbors, brought suit on behalf of the city for money had and received by the defendants under an alleged invalid disbursement of municipal funds. The defendant councilmen appeal from adverse judgments.

There is no dispute about the facts relating to the alleged invalid or excessive payments to members of the city council. Under the Home Rule Charter of the City of Two Harbors,[1] the salary of the mayor was fixed at $150 per year and the salary of each alderman at $3 per meeting for each meeting actually attended, not to exceed, however, the sum of $150 in any one year. On December 3, 1951, the city council passed a resolution amending that provision so that the mayor's salary was increased to $50 a month and each alderman's salary was increased to $35 per month effective as of May 1, 1951, "as provided in Laws 1951, Chapter 573."

This amendment was approved by the city council on advice of the city attorney, without benefit of an opinion from the attorney general, on the assumption that such increase in salary was authorized by L. 1951, c. 573. That particular act provides as follows:

"In any city of the fourth class *adjacent* to a city of the first class, but located wholly within a different county in this state, the salary of

---

[1]Chapter II, § 14.

the mayor may be increased to $50 per month and the salary of each alderman may be increased to $35 per month, payable out of the treasury of such city of the fourth class, provided the governing body of such city so determines." (Italics supplied.)

There is no dispute that the city of Two Harbors is a city of the fourth class and that Duluth is a city of the first class, and it is conceded that they are located wholly within different counties. The district court determined, however, that the city of Two Harbors and the city of Duluth were not *adjacent* within the meaning of the statute. He accordingly held that the salary increases were not authorized and granted judgment against the defendants in the amount they received in excess of that provided by chapter II, § 14, of the charter.

The defendants contend that the charter provisions with relation to salary were superseded by L. 1951, c. 573; that Two Harbors is *adjacent* to Duluth within the meaning of that statute; and that consequently the disbursement of the increased salaries was valid. The plaintiff contends on the other hand that Two Harbors is not adjacent to Duluth within the meaning of the statute.

■■■ We are called upon to interpret L. 1951, c. 573, in light of the record before us, to determine the issue of whether Two Harbors is in fact *adjacent* to Duluth, so as to bring the ordinance increasing salaries within the authorization of the statute. The legislature did not see fit to define the term *adjacent* in the statute itself as other legislatures sometimes have done.[2] A statute is to be construed according to the legislative intent, which is to be sought in the language used, in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation. 17 Dunnell, Dig. (3 ed.) §§ 8940(2) and 8962; State v. Sullivan, 245 Minn. 103, 71 N. W. (2d) 895, 56 A.L.R. (2d) 871; Lunderberg v. Bierman, 241 Minn. 349, 63 N.W. (2d) 355, 43 A.L.R. (2d) 865; State v. Industrial Tool & Die Works, Inc. 220 Minn. 591, 21 N.W. (2d) 31. While the legislative journals throw no light on the

---

[2]See *State ex rel. Ives v. City of Kansas City*, 50 Kan. 508, 31 P. 1100, where the Kansas legislature defined adjacent cities as being not more than ¾ of a mile apart.

reasons for the enactment of this particular statute, the fact that it relates to municipalities within expanding metropolitan areas provides a fairly certain clue as to the intention of the legislature. It is apparent that the legislature intended to provide additional compensation to officers of cities of the fourth class where, because of the geographical location of such cities, such officers have added duties and responsibilities.

The act does not apply to all cities of the fourth class, but only fourth-class cities which are adjacent to first-class cities. The legislature recognized that special circumstances distinguish cities of the fourth class which are *adjacent* to cities of the first class from those which are not so adjacent. It is implicit in the limitation imposed that the legislature was concerned with situations where a city of the fourth class is faced with problems it would not have were it not for its close proximity with a city of the first class. It is apparent that the legislature recognized that such proximity creates problems for the council of a city of the fourth class so situated differentiating it from fourth-class cities not so situated. It is further apparent that the legislature had in mind cities of the fourth class and cities of the first class located in the same metropolitan area where, by reason of its location, the smaller unit of government finds itself confronted with many of the problems of the larger unit, compelling its city council to concern itself with matters with which the councils of other fourth-class cities are not burdened.

There are three cities of the first class in Minnesota: Minneapolis, St. Paul, and Duluth. Immediately abutting Minneapolis is Columbia Heights, a city of the fourth class, and immediately abutting St. Paul is West St. Paul, also a city of the fourth class. Each of these fourth-class cities is located wholly in another county than that of the city of the first class to which it is manifestly adjacent. Columbia Heights is a suburb of Minneapolis and a part of the same metropolitan community. The same is true of St. Paul and West St. Paul. The municipal functions of each tend naturally to be interrelated. In matters of fire protection, police law enforcement, water facilities, sanitation, transportation, and the like, there is a natural and necessary corelationship between the larger and smaller cities which imposes upon the councils of these smaller cities burdens not common to other fourth-class

cities. Thus it is obvious that the legislation was intended to apply to fourth-class cities in the situation of Columbia Heights and West St. Paul.

Our court has had occasion to interpret or to construe the word "adjacent" in connection with other statutes. It is recognized that the word is relative in meaning and its construction should be determined by the context in which it is used in the statute. 2 Wd. & Phr. (Perm. ed.) pp. 585 to 600. In State ex rel. Childs v. Minnetonka Village, 57 Minn. 526, 531, 59 N. W. 972, 973, 25 L.R.A. 755, there was before us for construction a statute which provided that "Any district, sections or parts of sections which has been platted into lots and blocks, also the lands adjacent thereto, * * * may become incorporated as a village." In interpreting the phrase "lands adjacent thereto" we said (57 Minn. 533, 59 N.W. 974) that it "meant only those lands lying so near and in such *close proximity* to the platted portion as to be *suburban* in their character, and to have some *unity of interest* with the platted portion in the maintenance of a village government." (Italics supplied.)

In Hobart v. City of Minneapolis, 139 Minn. 368, 166 N.W. 411, which had to do with the validity of the action of the city in acquiring certain lands outside the city limits for park purposes under a law authorizing the park board to maintain parks and parkways "in and adjacent to the city of Minneapolis; and from time to time add thereto," and to obtain title thereto for such purpose, we said (139 Minn. 370, 166 N.W. 412):

"* * * The word 'adjacent' used in such statutes as descriptive of what lands may be so added to a municipality is given substantial and broad construction, and is not limited to its primary meaning as defined by the lexicographers. * * * It is not necessary * * * that the tract of land sought to be added * * * should immediately adjoin the municipal boundary. It is sufficient that the particular tract adjoins and is contiguous to another tract previously added to the city, so that the whole shall constitute one continuous and united territory."

In Booth v. City of Minneapolis, 163 Minn. 223, 203 N.W. 625, which involved the acquisition of land outside the city for a golf course

pursuant to authority in the city charter to "maintain parks in and adjacent to the city," we held that the element of "community of interest" with the lands in the corporate limits of the city brought it within the term "adjacent" as used in the city charter.

Applying the law stated in the Minnetonka case in State ex rel. Childs v. Village of Fridley Park, 61 Minn. 146, 148, 63 N.W. 613, 614, this court denied a petition for incorporation by Fridley Park village because it was "remote" from land sought to be incorporated into it and had "no unity of interest with it in the maintenance of a village government." See, also, State ex rel. Douglas v. Village of Holloway, 90 Minn. 271, 96 N. W. 40; State ex rel. Young v. Village of Gilbert, 107 Minn. 364, 120 N.W. 528; State ex rel. Simpson v. Village of Alice, 112 Minn. 330, 127 N. W. 1118; State ex rel. Simpson v. Village of Dover, 113 Minn. 452, 130 N.W. 74, 539; State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 186 N.W. 694, 189 N.W. 592; State ex rel. Burnquist v. So-Called Village of St. Anthony, 223 Minn. 149, 26 N.W. (2d) 193.

From the foregoing authorities we conclude that the term *adjacent* as used in L. 1951, c. 573, refers to cities described in the act which are located geographically within a metropolitan area which is suburban in character, and because of such location they have a community of interest arising from mutual problems in the area of municipal government, which problems impose upon the officers of the smaller city duties and responsibilities which officers of cities of the same class not similarly located do not have.

Applying this criteria to the facts before us, it appears from the record that the distance between the nearest points of the respective boundary lines of the cities of Duluth and Two Harbors is 15.13 miles; that the urban sections of the cities are 22.3 miles apart; that the main business sections of the two cities are 27.1 miles apart; and that the urban sections of the two cities are separated by territory that is largely rural and sparsely populated except for six small communities scattered along Highway No. 61 consisting largely of fishermen's homes, summer cabins, tourist motels, and the like. These facts completely negate any possible claim that Two Harbors occupies any suburban relationship to the city of Duluth or that it can be considered to be a part of the

latter metropolitan area.

The defendants introduced evidence to the effect that Two Harbors banks have correspondent banks in Duluth; regular bus schedules are maintained; insurance adjusters come from Duluth to Two Harbors to do business; and there is considerable commerce between the two communities. We do not think that any of these factors give rise to a "community of interest" beyond that which exists normally between cities in any geographical region. The defendants called a consulting engineer who testified that the city of Two Harbors had a water-pollution problem but he admitted that the source of it was primarily local and any claim that it arose because of the fact that Duluth was a neighboring city was largely theoretical.

■ The defendants contend that the trial court erred in denying their motion to dismiss the plaintiff's amended complaint because it failed to allege that he had requested the proper officials to institute this action. It is well established that such a request is unnecessary where, as here, it is charged that the mayor and aldermen have received public funds for unauthorized purposes and the action is brought against such officers to compel restitution of such funds. In such cases, an allegation in the complaint that it would be futile to make such a request, such as complaint contained here, is sufficient. 13 Dunnell, Dig. (3 ed.) § 6848; Burns v. Essling, 154 Minn. 304, 191 N.W. 899; Muirhead v. Johnson, 232 Minn. 408, 46 N.W. (2d) 502.

■ The defendants' assignments of error Nos. 5 to 10, inclusive, approach from various points of view the argument that the decision of the trial court must be set aside because it is "a collateral attack upon the discretionary powers of a legislative body in its exercise of an administrative function." They argue that the act of the city council in amending the salary provisions of the city charter cannot be disturbed in the absence of a showing that such action was arbitrary, fraudulent, capricious, or unreasonable. It is difficult for us to see any merit in this contention. If Two Harbors actually qualified under the statute, it is conceded that a review of its council's action would be limited to a determination of whether the action in raising the salaries and the amount of the raise in salaries was under the circumstances

arbitary, fraudulent, capricious, or unreasonable. The question before us, however, is not whether the action of the city council was arbitrary, fraudulent, capricious, or unreasonable. The question is whether, under L. 1951, c. 573, the city council of Two Harbors had the right to increase salaries in the first place. The defendant's contention ignores established judicial process (Minn. Const. art. 3, § 1, and art. 6, § 2; M. S. A. 645.08, 645.16, et seq.); and would deprive the court of its right and duty to interpret the meaning of the statute.

If every city of the fourth class in the state were left to decide for itself whether or not it was "adjacent" to a city of the first class within the purview of the statute, it is quite probable that results would follow which the legislature never intended.

We agree with the trial judge that there is no particular community of interest between the cities of Duluth and Two Harbors and that the problems of Two Harbors and the responsibilities of office cast upon its city council have not been materially increased by the geographical relationship of Two Harbors to Duluth, and that the specific findings of fact and conclusions of law that the City of Two Harbors is not adjacent to the City of Duluth within the statute here involved is sustained by the evidence.

Affirmed.