## STATE ex rel. GEORGE T. SIMPSON v. VILLAGE OF ALICE and Others.[1]

November 4, 1910.

Nos. 16,734—(254).

**Territory subject to village government — test.**

The final test whether territory adjacent to platted lands may be incorporated with it as a village, pursuant to R. L. Supp. 1909, § 700, is whether they have such a natural connection and the people residing thereon have such a community of interest that the whole may be properly subjected to village government. So tested, the allegations of the answer are not so clearly insufficient as to justify a judgment of ouster upon a demurrer thereto.

Proceeding in the nature of quo warranto against the village of Alice, the president, clerk and trustees of the village, to test the validity of the incorporation of the village. Respondents answered the petition of the relator, and he demurred to the answer on the

[1] Reported in 127 N. W. 1118.

ground that it did not state facts sufficient to constitute a defense to the information filed. The substance of the facts, as alleged in the answer or admitted, is given in the opinion. Demurrer overruled, with leave to reply.

*George T. Simpson,* Attorney General, and *Washburn, Bailey & Mitchell,* for relator.

*Samuel C. Scott* and *Victor L. Power,* for respondents.

START, C. J.,

Quo warranto proceedings to test the incorporation of the village of Alice, which claims to be a municipal corporation by virtue of R. L. Supp. 1909, §§ 700–704. The statute in form was complied with, and if the facts were sufficient to bring the case within the statute the village is a de jure municipality of the state. The respondents made answer to the petition, to which the relator interposed a general demurrer.

The question for our decision is whether the facts admitted by the demurrer were such as authorized the incorporation of the village by a compliance with the forms of the statute, the material provisions of which are these: "Any district, section or parts of section not in any incorporated village, * * * which has been platted into lots and blocks, also the lands adjacent thereto, * * * containing a resident population of not more than three thousand nor less than two hundred may become incorporated as a village in the manner hereinafter prescribed. But the unplatted part of such territory must adjoin the platted portion and be so conditioned as properly to be subjected to village government."

The creation of municipal corporations is solely a matter for the legislature, which it cannot delegate to the courts; but it has provided by a general statute the conditions upon which any specified territory may be incorporated, if a majority of the electors residing thereon so determine by a majority vote. When the illegality of the incorporation of any territory under the statute is challenged in the courts, the only question which can be considered is whether the facts bring the case within the conditions. No inflexible rule can be laid down by which the question can be answered; for each

case must depend, to some extent at least, on its own particular facts. Neither the extent of the adjacent territory nor its relative value to the platted territory is one of the conditions found in the statute; but the unplatted part of the territory "must adjoin  *  *  . *  and be so conditioned as properly to be subjected to village government."

Whether the adjacent territory may be properly subjected to village government is not to be determined by the pecuniary interests of the owners thereof; but their land cannot arbitrarily be brought into the village simply for the purpose of increasing its revenues by taxing it. The adjacent lands must be so near to the center of the platted lands as to be somewhat suburban in their character. The final test is whether the platted territory and the adjacent territory are so limited in area and have such a natural connection, and the people residing thereon have such a community of interest, that the whole may be properly subjected to village government. State v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L.R.A. 755; State v. Village of Fridley Park, 61 Minn. 146, 63 N. W. 613; State v. Village of Holloway, 90 Minn. 271, 96 N. W. 40; State v. Village of Gilbert, 107 Minn. 364, 120 N. W. 528.

These cases, in all of which the incorporation was held void, illustrate the practical application of the rules stated. The here relevant facts in the first one were briefly these: The territory claimed to have been incorporated consisted of thirty square miles of land, within which there were some seventeen tracts which had been platted, but were separated by farms or uncultivated lands. Many of the platted tracts were entirely vacant and uninhabited, and on the others there were not inhabitants sufficient to constitute a village in the ordinary sense of the term. The territory involved in the second case was from five to six miles in length, and from one to three miles in width, and included more than fifteen square miles of land, within which there were over thirty different tracts platted into lots and blocks. Many of these platted tracts were separated by intervening farming land. On two sections of the land there were no buildings, and the number on the other sections ranged from three to twelve.

The territory sought to be incorporated in the next case was

five miles long and from one to two miles in width, and contained nearly six sections of land, only forty acres of which was platted, on which only one hundred inhabitants resided. The rest of the territory consisted of farms, occupied by resident farmers, with their families. The territory in question in the last case cited consisted of twenty-two hundred forty acres, of which eighty acres were platted, but only ninety-eight persons resided thereon. The rest of the tract consisted of wild cut-over lands, not inhabited, and three iron mines. There were separate settlements from a half to one and one-half miles distant from the platted tract, around the several mines, aggregating three hundred thirty-five people. Intervening the mines and the platted part on the south, which was not incorporated, two hundred eighty-eight people resided. It was urged as a reason for including the wild lands and the mines in the village corporation that it was necessary for the purposes of police and fire protection.

A consideration of the particular facts of each of the cases cited led the court to the conclusion that the alleged adjacent lands could not be subjected to the government of the village, and the municipalities were dissolved. We have, then, the question whether the special facts in the case at bar differentiate it from those cited.

The facts in this case, as alleged in the answer or admitted, so far as here material, are to the effect following: The territory attempted to be incorporated comprised sections 12 and 13, township 57, range 21, being two miles long and one mile wide. The north line of section 12 is the south line of the village of Hibbing, the population of which is some twenty thousand. There are no permanent dwelling houses nor permanent residents on section 12, but the Scranton iron mine is located and operated on the northeast quarter thereof. The principal occupation of many of the workingmen of the village is working in or about this mine and others. There is maintained on the property of the mining company a storehouse for dynamite and other highly explosive substances, also a pesthouse, in which patients are treated for contagious and infectious diseases. Three forties of the east tier of forties in section 13 had been platted and had a resident population of two hundred thirty-three when pro-

ceedings were taken to incorporate. Since then two more forties, being the south half of the southeast quarter of section 13, have been platted. The north line of the platted part is half a mile from the quarter on which the Scranton iron mine is located. All of section 12, except that part used by the Scranton mine, is wild and unoccupied land, eleven forties of which are held by mining and land companies for mining interests. All of section 13, except the platted portion, is vacant. Little, if any, of the territory of the village is suitable for agricultural purposes. Two railroad lines run through the village, one through the platted portion. The natural drainage of the village is a creek, which passes through it and near to the platted portion thereof, the waters of which are contaminated by the sewage from the village of Hibbing. The answer alleges other facts, but none which modify the brief summary we have given.

The area of the village here in question is materially less than in the cases cited. No hard and fast rule can be laid down as to the extent of territory which may be included by incorporation in a village, as each case must largely depend upon its own facts; hence the statute fixes no arbitrary limitation in this respect. In the cases cited the area of the several villages was so large and of such a character as to leave no fair question, for it was grotesquely excessive. We are not prepared to hold as a matter of law in this case that the mere inclusion of two sections of land, much of it suitable only for mining purposes, within the limits of a village, renders its incorporation invalid. The fact that the lands included in this village are suitable for mining purposes might be a reason why it would be proper so to include them; for lands of that class may, and usually do, derive a benefit in many ways from being included within the limits of a municipality, such as the benefit of police protection, water, lights, and sewage. Hunter v. City of Tracy, 104 Minn. 378, 382, 116 N. W. 922.

The legislature has recognized this fact by providing for the detaching of lands used for agricultural purposes from villages, but retaining land used for manufacturing or mining purposes. Laws 1907, p. 294, c. 221. Again, if it be a fact that a large portion of the male inhabitants residing on the platted portions of the village

work in the iron mine on section 12, and that it is necessary to include it in the village limits, so that streets may be laid over it and sidewalks constructed, and to subject it to the police regulation of the village, in order to conserve the comfort, convenience, and health of the people living in the village proper, such facts would be material in determining the legality of the incorporation of the village. The allegations of the answer as to these matters, while sufficient as against a general demurrer, are not as specific as would be findings of fact by the court after hearing the evidence, upon which a definite conclusion can be based. A majority of the court are of the opinion that the demurrer ought to be overruled and evidence taken, unless the parties make a clear and specific stipulation of facts upon which a judgment may be awarded, which would not prove to be a stumbling-block in the future. It is a delicate matter for the courts to dissolve existing municipalities purporting to have been organized by legislative authority, and we desire to be well advised of the specific facts before doing so.

.It follows that the demurrer must be overruled, with leave to the relator to reply within fifteen days after notice of this decision. So ordered.

LEWIS, J. (dissenting).

On the authority of State v. Village of Gilbert, 107 Minn. 364, 120 N. W. 528, and other cases cited in the majority opinion, it is my view that the admitted facts show conclusively that the unplatted portion had no natural connection with the platted portion, and that the people, if any, who reside upon the unplatted portion, have no community of interests with those residing upon the platted portion.