## STATE ex rel. LYNDON A. SMITH v. VILLAGE OF GILBERT and Others.[1]

December 11, 1914.

Nos. 18,819—(16).

**Construction of statute.**

1. Properly construed chapter 113 of Laws 1909, providing for annexation of territory to villages and cities, applies both to existing and to future municipal corporations of that kind. The clear intent expressed in the first part of the first section to include future as well as existing villages, aided by the presumption that the legislature intended to pass a constitutional act, leads to the conclusion that the word "present" in the latter part of said section refers to the village limits as "present" or existing at the time of the institution of the annexation proceedings and not to the time of the passage of the statute.

**Village — annexation of territory.**

2. It is no valid objection to village annexations that territory properly conditioned to be annexed was not included.

**Fraudulent votes did not change result.**

3. The fraudulent and unlawful colonization of the annexed territory by residents of the village prior to the election and their taking part therein, assuming that it can be raised in this proceeding, did not change the result, for if all such illegal votes are rejected and that number deducted from the votes cast in favor of annexation, the proposition still received a majority.

**Annexation of territory.**

4. Territory annexed to a village, like territory originally incorporated, must be so conditioned as properly to be subjected to village government.

**Same.**

5. It does not appear from the record herein that the territory annexed was not within the condition mentioned.

Upon the petition of Lyndon A. Smith, as attorney general of the state of Minnesota, this court granted its writ directing the village

1 Reported in 149 N. W. 951.

of Gilbert and the trustees of that village to show *quo warranto* they held and exercised their authority and offices in certain territory described in the writ, and to show cause why the annexation proceedings mentioned in the opinion should not be declared illegal and void, and why the individual respondents should not be ousted. The respondents answered. Writ discharged.

*Lyndon A. Smith,* Attorney General, *Baldwin, Baldwin & Holmes* and *Washburn, Bailey & Mitchell,* for relator.

*Warner E. Whipple, W. H. Radermacher* and *O. J. Larsen,* for respondents.

HOLT, J.

This is a *quo warranto* proceeding brought in this court to test the legality of the annexation of certain territory to the village of Gilbert in St. Louis county. The village as originally incorporated included 2,240 acres. In *quo warranto* proceedings, reported in 107 Minn. 364, 120 N. W. 528, a writ of ouster was granted because the territory lacked urban qualification. Thereupon, in virtue of chapter 148, p. 160, of the Laws of 1909 and the general law relating to village organization, the village again incorporated, retaining 80 acres of the original territory and adding on the south of the west 40 thereof a wedge-shaped piece of 53 acres. The annexation now attacked was made under and in conformity to chapter 113, p. 103, Laws of 1909, which was enacted and went into effect prior to the incorporation of the present village of Gilbert.

The principal reasons for asserting the illegality of the annexation are: (1) The unconstitutionality of the law under which it was attempted; (2) its inapplicability, even if constitutional, to the village of Gilbert; (3) if the foregoing propositions are not sustained, irregularity and fraud in the proceedings vitiated the attempted annexation; and (4) the territory annexed is not so conditioned that it is proper to come under village government.

Section 1 of chapter 113, p. 103, Laws of 1909 (section 1800, G. S. 1913), reads: "Any territory containing a population of not less than 75 persons, and not included in any incorporated city or village, but adjoining any city or village now or hereafter existing

under the laws of the state of Minnesota, and no part of which territory is more than one and one-half miles from the present limits of the city or village which it adjoins, may be annexed to such city or village and become a part thereof." Then follow sections prescribing the procedure. It is contended that the section quoted, properly construed, applies only to cities and villages in existence when the law was enacted. If true, the act is void. Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; State v. Cooley, 56 Minn. 540, 58 N. W. 150; State v. Ritt, 76 Minn. 531, 79 N. W. 535; Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623. The first part of this section is clearly indicative of an intent to embrace all cities and villages whether then in existence or thereafter organized. The only doubt arises from the use of the words "present limits" in the last part of the section. The use of the word "present" unquestionably injects an ambiguity, if a literal and strict interpretation is attempted. But courts often, and without serious misgivings, convict legislators of inaccuracy in the use of words, in order to absolve them from the more serious charge of attempting to pass a law in conflict with the Constitution. It must be presumed that the legislature intends to enact valid laws. If there be reasonable room to construe a statute so that it will not offend the Constitution, it must be done. We find no difficulty in holding that the word "present" refers to the limit of the village at the time of the institution of annexation proceedings, and not to village limits at the time of the enactment of the law. This construction also refutes the claim that the law is not applicable to the village of Gilbert. Annexation in virtue thereof can be made to existing and future villages and cities alike.

As to irregularity, the contention is that there was territory immediately north and east of the village having streets laid out conforming to those in the village and a large population essentially urban in character which was not included in the annexation, but purposely excluded, because it was known that the voters thereof would have defeated the project, as was done two years previously when such territory, together with part of that in the present annexation, was attempted to be added to the village. A sufficient answer

is that the legislature has not made it a condition that all the suitable territory adjoining a village or city shall be included in an annexation attempt. Indeed, if the several statutes now existing be examined, it would seem that the policy is to permit piecemeal annexations as well as detachments. G. S. 1913, §§ 1226, 1228, 1230, 1233, 1241, 1798. However, it is clear that the act under consideration does not contemplate that the annexation of any particular territory shall depend upon the nonexistence of other urban or semi-urban territory adjacent to the village. It is made to rest upon the sole determination of the electors of the territory proposed to be annexed and its fitness for village government, save that the governing body of the village possesses the discretionary right to order the election to be held in such territory. The original incorporation of a village is not open to attack, because there was left out other adjoining territory which properly could have been included. State v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539. No reason or law calls for a different rule in respect to subsequent extensions of a village. So that we cannot hold that the governing body of the village exercised an arbitrary discretion in ordering an election for this annexation, because it did not include other adjoining urban or semi-urban territory. It must be remembered that the formation of municipalities and the annexing or detaching territory therefrom is with the legislature and not the courts. We cannot question the wisdom of the statutes regulating the same, nor the expediency of the conditions prescribed for the right to organize or to change.

The relator earnestly insists that there was such fraud practiced by village officers and residents of the village that the election must be declared invalid. The evidence is convincing that colonization of prospective voters in the territory to be annexed was attempted by residents of the village. Connected with the under-handed and unlawful plan we find an employee and an officer of the village. The opponents of annexation were not asleep; their methods of frustrating the scheme were as cunning; and are excusable only on the theory that the end justifies the means. It is not necessary to go into details. For, conceding that the result of the election can be questioned by this proceeding, a point we do not decide, it cannot be held that

the ballots fraudulently cast by persons not entitled to vote render void the ballots duly cast by the qualified voters at a lawfully called and conducted election, upon a proposition which they had the right to determine. At the most, the ballots fraudulently cast may be rejected. Here 60 ballots were cast in favor of annexation, 33 against, and one was spoiled. We do not understand that it is claimed that more than 16 ballots were cast by those who had no right to vote—who were colonizers. If we assume that every one of these illegal ballots was cast for annexation and hence deduct them from the 60 affirmative votes, we still have a decisive majority in favor of annexation. Even if all challenged votes—25—were assumed to be fraudulent and considered cast in favor of annexation, there would still be a majority for the proposition. The opponents of annexation were closely watching the election, assisted by lawyers of rare ability, and we may rest assured that no questionable vote went unchallenged.

By chapter 113, p. 103, Laws of 1909, no condition at all is prescribed for the territory proposed to be annexed, except that it must contain a population of not less than 75 persons, that it must not then be within the limits of any city or village, but must adjoin the limits of an existing village or city to which it is proposed to attach it, and that no part thereof can be more than one and one-half miles from such limits. The territory here annexed contained a population of 590 persons, was not within the limits of any existing village or city, it adjoined the then limits of the village of Gilbert, no part thereof was more than one and one-half miles from the then village limits. It contained 1,880 acres. So that there was a literal compliance with the statute. But we may assume, and so hold, that the same qualifications extend to territory sought to be annexed as to territory included in the original incorporation, namely, it must be "so conditioned as properly to be subjected to village government." And whether it reasonably comes within this definition is, we take it, the only question open for consideration by the court. The record discloses that Gilbert is a flourishing mining village of nearly 2,000 inhabitants, with some 500 more in contiguous territory other than the 1,880 acres mentioned. The annexed territory, with the wedge-shaped 53 acres of the village projecting into the northerly side, is

in compact form, almost square. In the northeasterly part there are groups of settlements unquestionably semi-urban in character, and the same applies to a 40-acre tract or two in the southwesterly part. On some of the intervening ground are mines in operation containing the necessary buildings and equipment. The mines employ several hundred men working in shifts night and day who reside either at the village or, in the settlements referred to, in the annexed territory. The people in the southwest corner have convenient communication with the city of Eveleth to the southwest and not much more distant than Gilbert, but the testimony shows that by far the greater amount of their trade and intercourse is with Gilbert. Although part of the territory not occupied by habitations, mines or mining equipment, is devoted to garden patches, the greater part thereof is either wild cut-over land, or ground utilized for dumps in the mining operations. It is not contended that any substantial portion thereof is adapted for agricultural purposes. A mine near the southwest limits has supplied the village so far with water, but it is claimed that the village stands in need of the annexed territory through which to reach a large lake on the south boundary for future water supply. This is of no great weight since under section 1819, G. S. 1913, villages may obtain access to water, and furnish those outside the village limits therewith. Under the whole annexed territory valuable ore deposits are supposed to exist, so that while the assessed valuation of the property in the village proper is less than a quarter of a million dollars, that in the annexed territory is over five millions. In the great possibilities of revenue from the taxation of these valuable mining lands, no doubt, is found one of the chief motives for and against annexation. But the legislature has not made the value of either the territory to be incorporated into a village, or that to be annexed, a condition for or against. There would be no village here but for the existence and operation of the mines. The men inhabiting the so-called locations, surrounding the mines, resort to the village proper for their needs. The churches, lodges, stores and places of amusement are in the village proper. So is the high school. There is a certain dependence of a mining or manufacturing community upon the adjacent village or city different from

that of the agricultural community. This the legislature has recognized in provisions permitting purely agricultural lands to be detached. Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922.

Relator relies on the decision holding the original corporation vulnerable, because it included a large extent of territory not so conditioned as to be proper for village government. The argument is that the annexed territory is largely the same in kind. But it must be remembered that the facts now disclosed are very different from the ones then pleaded. Then it appeared that on the platted portion in the incorporated village resided only 98 persons, now in the village reside 1,800 people, and in it those in the surrounding locations within the one and one-half mile limit transact most of their business. It is the nucleus to which the people in the annexed territory are drawn. In the mines within the annexed part several hundred men work, many of whom reside in the village, and pass back and forth. From the valuable mineral deposits, assumed to be in the ground, it is reasonable to believe that the ore will be mined, and thus give employment to a great number of men for years to come. From our decisions it is apparent that land may be included which is not needed for present village purposes. Future necessities and growth may be anticipated. What territory shall and what territory shall not be included in a village incorporation or annexation is a question of fact to be determined by the people immediately interested within the limits placed by the legislature. "The soundness of their judgment in passing on the question must be tested as questions of fact * * * are tested on appeal." State v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539. In State v. Village of Alice, 112 Minn. 330, 127 N. W. 1118, the conditions of the lands incorporated into a village were very similar to the territory here in question. It comprised two sections, on one of which were no dwellings. It was wild land, except for a mine in operation on one of the forties and this was located half a mile from any of the platted part. The population was only 233 persons. The opinion, after referring to the rule that creation of municipal corporations is solely for the legislature—the same holds true in respect to annexations—and that in an attack upon the legality of such corporations courts can do noth-

ing more than determine whether the conditions prescribed by the legislature existed when organized, states: "No inflexible rule can be laid down by which the question can be answered; for each case must depend, to some extent at least, on its own particular facts. Neither the extent of the adjacent territory nor its relative value to the platted territory is one of the conditions found in the statute. * * * The fact that the lands included in this village are suit-able for mining purposes might be a reason why it would be proper so to include them; for lands of that class may, and usually do, de-rive a benefit in many ways from being included within the limits of a municipality, such as the benefit of police protection, water, lights, and sewage." Assuming that territory annexed must like that in the original incorporation be "so conditioned as properly to be subjected to village government," nevertheless we are not justified in overruling the finding of the electors that the territory in this case was so conditioned. The precedent established in the Alice village case, where the disclosed conditions were not as favorable for village government as in the instant case, sustains our conclusion. It is not for this court to determine whether the legislature is wise in the ex-tensive additions permitted, or the people wisely covet the chance to place additional burdens of village improvements on mine owners who have so far, apparently without objection, sustained the heavy end of, perhaps, the heaviest burden of every village or city, namely, that of education. The village is part of an independent school dis-trict 18 miles long and from three to six miles wide, the center of which is in the village, where are located a costly high school and grade schools conducted under the very latest methods, with nurses, medical attendance, evening school, vocational schools, entertain-ments, free conveyance of pupils, etc.

To the effect that the creation of municipal corporations, change in their boundaries by annexation or severance of territory, and the conditions upon which such creation or change may be made, are legislative and not judicial questions may also be cited: State v. Simons, 32 Minn. 540, 21 N. W. 750; City of Winona v. School District No. 82, Winona County, 40 Minn. 13, 41 N. W. 539, 3 L.R.A. 46, 12 Am. St. 687; People v. City of Riverside, 70 Cal.

461, 11 Pac. 759; State v. City of Waxahachie, 81 Tex. 626, 17 S. W. 348; Kelly v. Pittsburg, 104 U. S. 78, 26 L. ed. 659, and section 265, McQuillin, Municipal Corporations.

In our opinion the writ should be discharged. So ordered.