# STATE EX REL. CLIFFORD L. HILTON, ATTORNEY GENERAL v. VILLAGE OF BUHL AND OTHERS.[1]

## October 28, 1921.

## No. 22,236.

**Village — what territory may be annexed.**
    1. In a proceeding under G. S. 1913, § 1800, et seq., to annex terri-

[1] Reported in 184 N. W. 850.

tory to a village, the property annexed must be so conditioned as properly to be subjected to village government.

**Same — courts will not sustain arbitrary action by voters.**

2. Whether it is so conditioned is primarily for the voters, but if their action is clearly arbitrary, for the purpose of increasing sources of revenue rather than of subjecting to the local village government property having a natural connection with it and people residing thereon having a community of interest, the courts will not sustain it.

**Annexation invalid.**

3. The territory annexed to the village of Buhl was not so conditioned as properly to be subjected to the village government, within the meaning of the legislature, and the annexation was arbitrary and invalid.

Upon the relation of Clifford L. Hilton, Attorney General, the supreme court granted its writ of quo warranto directed to the village of Buhl and its officers to determine the legality of the annexation of certain territory to that village. Writ of ouster ordered.

*Clifford L. Hilton,* Attorney General, and *Washburn, Bailey & Mitchell,* for relator.

*Warner E. Whipple* and *A. R. Folsom,* for respondents.

DIBELL, J.

Quo warranto on the relation of the attorney general to determine the validity of the annexation of territory to the village of Buhl in St. Louis county.

1. The proceeding for annexation was under G. S. 1913, § 1800, et seq. It was regular. The respondents contend that since the statutory proceeding was regular there is nothing for review by the courts. We have held that section 1800 must be construed in connection with section 1204 et seq., and that the requirement of section 1204, not contained in section 1800, that the property annexed must be "so conditioned as properly to be subjected to village government," attaches to the proceeding under section 1800. State v. Village of Gilbert, 127 Minn. 452, 149 N. W. 951; State v. Village of Kinney, 146 Minn. 311, 178 N. W. 815. The holding was made after argument, it was correctly made, and it is to be taken as settled law.

2. The question whether territory proposed to be annexed is so conditioned as properly to be subject to village government, is primarily and in the first instance one of fact for the voters, and their decision will not be disregarded, unless it clearly appears that it was arbitrary. That was distinctly held in State v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539.

In referring to the meaning of the requirement that the lands annexed be so conditioned as to be properly subject to village government, the court in that case said [p. 456]:

"It does not mean that there must be a present necessity for such lands for building or other village purposes. It is not necessary that all such lands shall be platted, graded, or used for village purposes at any particular time in the future. Adjoining lands may be brought within the limits of the corporation and be subjected to village government, if it may fairly be said that there exists, or may exist within a reasonable time in the future, a unity of interest in the enforcement of law, such as police patrol and the public health."

In State v. Village of Alice, 112 Minn. 330, 127 N. W. 1118, the court, referring to the same matter, said [p. 332]:

"Whether the adjacent territory may be properly subjected to village government is not to be determined by the pecuniary interests of the owners thereof; but their land cannot arbitrarily be brought into the village simply for the purpose of increasing its revenues by taxing it. The adjacent lands must be so near to the center of the platted lands as to be somewhat suburban in their character. The final test is whether the platted territory and the adjacent territory are so limited in area and have such a natural connection, and the people residing thereon have such a community of interest, that the whole may be properly subjected to village government."

The general principles announced in these cases were followed in the Gilbert case and in the Kinney case just cited, and the court appreciated the nature of the range mining country, the character of the villages scattered along it, the presence of mining locations and clusters of people without village government but tributary to organized villages, with intervening unsettled areas, and the desirability or neces-

sity of policing and providing sanitation and other comforts and conveniences.

2. Prior to the annexation under review Buhl contained substantially 41 forties or 1,640 acres. ' The platted portion was on 3 forties. The territory annexed contains slightly less than 2,800 acres. West of a line projected along the westerly border of the village there are substantially 1,400 acres. There are 3 residents. They live on a forty more than a mile west of the westerly line of the village and about 2 miles from the platted portion. Directly north of the village 8 forties, 3 of them state land, are annexed. There are no residents. South and southeast there are annexed 27 forties. On 9 of these there are residents. On the others there are none. Six or seven are state land.

Buhl had a population of 2,008 by the 1920 census. By the annexation its population was increased by 104, of whom 19 were voters. It had an assessed valuation of 9½ millions. By the annexation it got 4½ millions more.

The lands around the village are of the usual character of cut-over lands with brush growing and stumps standing. The territory to the west is crossed by a steam railroad and by the range electric line, and there are public highways. At the south and east, where all of the 104 except 3 live, there are a few who do farming. It amounts to little. They gain their livelihood by working in the mines or in the village or otherwise. The evidence does not show that mining development affecting the village is to be expected in the near future. The inference from the evidence is to the contrary. One forty at the extreme west of the added territory is now being stripped. It will be mined as an open pit mine in connection with 3 forties running east and west immediately west of it. The entrance is from the west. It will add no population to the annexed territory. The mining locations for this development are to the west in the village of Chisholm. The village, like other villages, is occasionally in danger from brush fires within its limits or outside of them. There is nothing exceptional in the situation of Buhl. Perhaps some of the territory to the south and to the east, where the 101 people live, is properly conditioned for village government. That is not a matter for present consideration.

There were 19 voters in the added territory. They voted unanimously for annexation. By their vote they added a population of 104 to the village's population of 2,008, 2,800 acres to the village's 1,640 acres, and an assessed valuation of 4½ millions to the village's 9½ millions. Nearly all of the added valuation of 4½ millions comes from the area of 1,400 acres containing a population of 3. The territory to the south and east, with a population of 101, adds less than $10,000 to the valuation.

The levy of taxes for village purposes in 1920 was $350,000; in 1919, $268,000; in 1918, $273,000 and in 1917, $179,000. The village has an indebtedness in excess of $600,000. These taxes do not include taxes for the support of schools and the indebtedness does not include the indebtedness of the school district. An increase of taxes in the annexed territory because of annexation is an expected result. It does not prevent annexation. But, as said in State v. Village of Alice, supra, land cannot be brought into a village arbitrarily just to increase its revenues or to add taxable property. The annexed territory ought of right to have some advantages for the increased taxes it pays.

We defer, as we ought, to the views of the 19 voters. We would blind ourselves to the facts, if we declined to see that the purpose of the annexation of all this territory is to annex sources of revenue rather than territory properly subject to village government. We do not hesitate to hold that the annexed territory is not so conditioned, within the meaning of the legislature, as to be subjected to the village government of Buhl and that the annexation is arbitrary and invalid.

Let a writ of ouster issue.