STATE EX REL. J. A. A. BURNQUIST v. VILLAGE OF NORTH POLE AND OTHERS.[1]

November 27, 1942.

No. 33,237.

[1]Reported in 6 N. W. (2d) 458.

*Herbert E. Olson* and *George L. Bargen,* for appellants (respondents below).

*J. A. A. Burnquist,* Attorney General, *Edward J. Devitt,* Assistant Attorney General, and *Armond D. Brattland,* for respondent (relator below).

JULIUS J. OLSON, JUSTICE.

*Quo warranto* upon the relation of the attorney general to test the corporate existence of the village of North Pole. Upon issues duly framed, the trial court found the facts to be substantially as claimed by the state, and judgment was ordered declaring the "purported incorporation and organization of said Village" to be "wholly null, void, and of no effect," and that "its purported officers" should be "ousted and excluded" from "acting and functioning in any manner as such." From the judgment entered pursuant thereto, defendants appeal. We shall hereafter include all defendants as the "village," since, upon this record, if the village is lawfully organized, the right of the individual defendants to hold office cannot be questioned.

The writ required the village to respond to the allegations thereof "by answer, plea, or demurrer" on February 11, 1941, at 10 o'clock in the forenoon at the courthouse in Bemidji, and to "show by what warrant" it was incorporated and organized, also by what warrant the individual defendants assumed to hold their offices. No judge being available on the return date, counsel by stipulation and order of the court changed it to February 18, which was the opening day of the February general term of the Beltrami county district court. On that day the state moved that the matter be set for trial on a day certain. The village, appearing specially, objected to the power of the court to order the matter tried at said term or to fix a day certain for trial, either in or out of term, on the ground that the matter was not on the calen-

dar for trial; also, that in any event the case was not triable without service of a notice of trial. The court overruled the objections and set the date for trial as April 8. This was later changed to May 7 on stipulation, which, however, reserved the rights of the village under the previous objection. On the adjourned date, the village again appeared specially, interposing the same objection which theretofore had been overruled. The court, being of the same opinion as before, proceeded to hear the case, the village duly excepting.

An election was held October 30, 1940, within the area proposed to be incorporated, at which 44 votes were cast for the formation of the corporation and 30 votes against it. The territory proposed to be included within the village limits consists of about 233 acres and lies along the westerly and northwesterly shore line of Lake Bemidji. It is about one and one-half miles in length and of varying width, from about 250 feet at the narrowest portion to about 2,600 feet at the widest. Of the total acreage so included, approximately 103 acres are platted, and this is divided into two portions, one at the northern and the other at the southern end of the proposed village, thus leaving about 130 acres of unplatted land lying toward the center of the two platted ends. A large part of the unplatted area consists of low and cutover spruce swampland. Upon the platted areas, especially at the northerly end, there are many cottages used by the owners and by visitors for summer vacations. Only a few persons live within this area during the entire year, the court having found that there are but 114 such actual residents. The Birchmont Hotel, located at the northerly end of the proposed village, operates only during the summer tourist season, and that is true also of the Birchmont store. The only year-round business conducted within the municipality is a combination cafe, liquor store, and night club known as the "Oasis." It operates under an "off and on" liquor license issued to its owner by the "new" village. There is in this area no school, post office, railway station, church, or industry of any kind—not even a barbershop or the usually ever-present gasoline

service station. Deliveries by those who furnish and sell such necessaries as groceries, meat, milk, ice, and other daily requirements are provided by merchants and tradesmen in the city of Bemidji, conveniently near and accessible to all concerned.

The court's findings adequately portray all the facts. Made a part thereof is a helpful memorandum in which the court cites many of our prior cases dealing with situations similar in principle to those here presented. The court pertinently points out that the real purpose of those seeking to have this area incorporated was—

"to secure the issuance of a liquor license which could not otherwise be accomplished. This was frankly admitted by some of the witnesses for the respondents. It is to be noted, too, that almost the first order of business of the purported offices [officers] was the adoption of ordinances providing for the licensing of liquor, and within ten days of the time of the purported incorporation, liquor licenses were issued to the 'Oasis.'

"The policy of the legislature in prohibiting liquor licenses except in municipalities requires the adhering to rather than the relaxing of those standards." (The "standards" to which the court referred are those laid down in many of our prior cases to be discussed later.)

The court was also of the view that there was here no "compact center or nucleus of population" within the platted areas, nor elsewhere within the proposed corporate limits.

The only "nucleus," said the court, if such it could be said to be, is "at the Birchmont Hotel, which is operated only during the summer months and closed during the remainder of the year, or the 'Oasis' which is principally a night club and liquor store and located in the unplatted portion of the territory. The vast majority of the lots in the platted portion of the territory are the usual summer residence properties" common to the lake region of the state, and more particularly to the lake shore areas abutting upon Lake Bemidji. "Even the schools serving the few children

who reside in this territory * * * are located on properties in the township outside of the territory included in the purported village. The whole area is so exclusively rural and summer resort property, so obviously and wholly other than urban in character, that it has no adaptability for village purposes and is not so conditioned as to be subjected to village government."

There are but two questions here for determination: (1) Whether the court was authorized, over timely objection, to hear the cause without notice of trial first having been served; and (2) whether, if having such power, the evidence sustains its findings. We shall consider them in that order.

Counsel for the village contend that "a party is entitled to a notice of trial as a matter of right" (citing 6 Dunnell, Dig. § 9700, and cases under note 48), and, such notice not having been served that the court, in overruling seasonable objections raising the point, committed "reversible error even though no prejudice" resulted. Our attention is directed to Minn. St. 1941, § 546.05 (Mason St. 1927, § 9289), which provides that "issues of facts may be brought to trial by either party, upon notice served eight or more days before the beginning of a general term."

Counsel concede that there is no statutory provision to which we may look for guidance. Nor do we find the cases they cite of much help. But, they say, there are other statutory provisions which, at least by analogy, support their theory. They refer to certain sections of the statutes relating to *quo warranto* proceedings, among them § 556.06 (§ 9709), which provides that the attorney general may "bring an action"; § 556.01 (§ 9711), which speaks of a "cause of action"; § 556.02 (§ 9714), which provides for entry of judgment; and § 556.05 (§ 9717), which permits the imposition of a fine.

▮ The question presented is strictly one of first impression and must be so determined. In its solution it may be well to look into the history of this ancient common-law writ. From its history we learn that, as authorized by our constitution and statutes, *quo warranto* is not the old common-law writ, but rather the

*information* in the nature of *quo warranto* as left by the changes brought about by St. 9 Anne, c. 20. It came into this country by adoption in that form as a part of our common law. State ex rel. Young v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905. (Mr. Justice Elliott in that opinion well summarizes the long and interesting history of the writ. A careful reading of that opinion is well worth while.)

Since the writ is an extraordinary legal remedy, it is not granted where another adequate remedy is available. State ex rel. Bell v. Moriarty, 82 Minn. 68, 84 N. W. 495. As to procedure in *quo warranto,* "the general rule in this country is substantially that of the common law after St. 9 Anne, c. 20." That procedure, "but slightly modified, prevails in this jurisdiction." State ex rel. Young v. Village of Kent, 96 Minn. 255, 266, 267, 104 N. W. 948, 952, 1 L.R.A.(N.S.) 826, 6 Ann. Cas. 905. And our cases uniformly hold that "*quo warranto* is the proper and, in the absence of statute, the exclusive proceeding to determine the * * * legal existence or validity of the organization of a public corporation." Evens v. Anderson, 132 Minn. 59, 63, 155 N. W. 1040, 1042; 5 Dunnell, Dig. & Supp. § 8064.

By Minn. Const. art. 6, § 2, this court is given "original jurisdiction in such remedial cases as may be prescribed by law." To make effective this provision, Minn. St. 1941, § 480.04 (Mason St. 1927, § 132), provides that this court "shall have power to issue * * * writs of * * * quo warranto and all other writs and processes, whether especially provided for by statute or not, that are necessary to the execution of the laws and the furtherance of justice." And by § 484.03 (§ 156), district courts are given power "to issue writs of * * * quo warranto, and all other writs, processes, and orders necessary to the complete exercise of the jurisdiction vested in them by law."

We therefore think it was for the attorney general to determine whether to proceed in the district court or before this court. Our cases clearly demonstrate that such power is vested in him by virtue of his office. So, if this case had been brought before this

court, no notice of trial would have been required. At least we find no case so intimating, nor have counsel for either party suggested that there is such a case. Is there, then, any distinction to be drawn between proceedings had in the district court and this court? Certainly none is apparent insofar as legal principles are concerned or the purpose to be accomplished. Promptness of final decision in matters of this nature is what furnishes the basis for the exercise of the power vested in the court by this form of procedure. "The mere fact that the law has been violated and an illegal village organized constitutes a prime public necessity, and all that is needed, not only to justify but to require the writ." State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 374, 206 N. W. 455, where it was said:

"True, where there are issues of fact, the district court is the appropriate tribunal for their determination and in such cases the application should be made there. But the writ is 'of right for the commonwealth against one who usurps or claims franchises or liberties.' * * * And the attorney general as the constitutional law officer of the state has a wide discretion not only in determining the occasion for the writ but also in selecting the tribunal from which it shall issue."

We think the trial court was right in holding that no notice of trial was required, not only for the reasons already stated, but also because Minn. St. 1941, §§ 546.02, 546.05 (Mason St. 1927, §§ 9287, 9289), relates to ordinary suits or actions, not to the special or extraordinary proceeding of *quo warranto*, which by its terms requires that respondents in such a case show, before a court of competent jurisdiction at a stated time and place designated in the writ, "by what warrant" they exercised the powers claimed. Rather, in its form and purpose, the writ is analogous to an order to show cause.

■ Going directly to the merits of the case, the question presented is whether the findings of the court are supported by the evidence. We have recited the essential facts and have no difficulty in finding them sustained by the evidence. Respondents

should bear in mind that upon them rested the burden of proof. State ex rel. Probstfield v. Sharp, 27 Minn. 38, 39, 6 N. W. 408; State ex rel. Douglas v. Gylstrom, 77 Minn. 355, 356, 79 N. W. 1038. "One claiming an office can succeed only on the strength of his own title." 5 Dunnell, Dig. § 8072, and cases under notes 82 and 83; State ex rel. Gall v. Barnes, 136 Minn. 438, 439, 162 N. W. 513, 1050. Here, as in State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 373, 206 N. W. 455, 456, "the facts appearing, no presumptions are to be indulged in favor of the propriety of the incorporation." Or, as stated in State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 549, 186 N. W. 694, 189 N. W. 592, 595: "It is a fundamental requirement that the territory incorporated be so conditioned as to be subjected properly to municipal government. * * * *When this question is presented it is for the court to speak."* (Citing cases.) (Italics supplied.)

We concur in the views expressed by the trial court that the area sought to be incorporated "has no adaptability for village purposes and is not so conditioned as to be subjected to village government."

Judgment affirmed.

[1]Reported in 6 N. W. (2d) 454.