STATE EX REL. J. A. A. BURNQUIST v. SO-CALLED VILLAGE
OF ST. ANTHONY AND OTHERS.[1]

January 4, 1947.

No. 34,249.

J. A. A. *Burnquist,* Attorney General, *William C. Green* and *Kent
C. van den Berg,* Assistant Attorneys General, *R. S. Wiggin,* City
Attorney, *John F. Bonner* and *Charles A. Sawyer,* Assistant City
Attorneys, *Nichols, Mullin & Farnand,* and *Covell, Root & Bach-
elder,* for relator.

*Perry R. Moore, Robert W. Dygert,* and *Stinchfield, Mackall,
Crounse & Moore,* for respondents.

[1]Reported in 26 N. W. (2d) 193.

150

PETERSON, JUSTICE.

After this proceeding in quo warranto to test the legality of the incorporation of the village of St. Anthony in Hennepin county had been referred to a referee to report findings of fact and conclusions of law and the referee had made his report pursuant to the order of reference, the matter came before us upon relator's motion for an order vacating the decision and report of the referee and for a new trial. The grounds of the motion are alleged errors in the admission of evidence and lack of evidentiary support for the findings. We shall consider only the two grounds argued in the briefs. The others we deem waived, under the rule that grounds for relief not urged are waived.

The referee, after an extended hearing lasting four days and after a view of the *locus in quo* with counsel, found as facts: That the village was incorporated in compliance with governing statutes; that the territory included in the village consists of a remnant of St. Anthony township, described as all of section six, the north one-half of section seven, and the southeast one-fourth of section seven, consisting of approximately 1,086 acres; that it is bounded on the south and west by the city of Minneapolis and on the east and north by Ramsey county; that the area so incorporated consists of both platted and unplatted lands; that the unplatted lands adjoin those which are platted "and are so conditioned as properly to be subjected to village government"; that the area contains seven contiguous areas, having in the aggregate 233.32 acres platted into blocks and lots, a golf course of 154.37 acres, a cemetery of 80.37 acres, another cemetery of 5 acres, two road plats covering 7.05 acres, and 606 acres of unplatted land; that the area as a whole is suburban in character, with the houses in the platted portions somewhat scattered and with those in the unplatted portions too near together to be altogether rural; that nearly all the inhabitants, with the exception of a few engaged in agriculture, are engaged in urban occupations; that the individual land holdings are small and indicative of suburban rather than rural use; that there is no nucleus of business buildings, but there is "a nucleus of resident population

of about 420 persons in the platted tracts, with about 240 additional on the unplatted land"; that there are 170 persons living in a trailer and tourist camp within the village; that "there are a few scattered business enterprises, which do nothing to give coherence to the area"; that the proximity of the lands used for agricultural purposes to the platted area gives every indication that they will be increasingly devoted to residential and industrial purposes; that the residents of both the platted and unplatted areas have a common interest, intensified by the governmental boundaries of the area, in law enforcement and whatever civic and urban facilities the area can afford; that "if any part of the area were to be separated from the rest and annexed to Minneapolis, or if any part were to be separately incorporated as a village, the rest of the area would suffer in consequence, because the likelihood of its obtaining such facilities would be diminished"; and, as conclusions of law, that the village is lawfully incorporated, and that the writ of quo warranto herein should be discharged.

We have carefully examined the voluminous record and have come to the conclusion that the evidence supports the referee's findings. Those mostly under attack relate to the finding that the village has a nucleus of resident population of 420 persons in the platted tracts; that some agricultural land was included; and that the rest of the unplatted land is suitable for village government. Under § 412.02, not less than 100 and not more than 10,000 persons are required as the population. The evidence shows that there are 420 persons in five named additions forming a rather compact community—over four times the minimum required by statute as the population of a village. The evidence shows that there are 413 persons scattered over the unplatted portions whose holdings are small and of a character used for home gardens and the like. True, a considerable amount of land is used for farming purposes, approximately 325 acres. Of this amount, 189.04 acres are owned by Armour & Company, a meat-packing concern. The rest, except one farm, consists of small tracts. All is suitable for division into smaller tracts and for use for suburban dwelling. Such a change

has been taking place not only in the area included in the village, but also in the surrounding area in Minneapolis and in Ramsey county, and the trend in that direction is increasing. It appears to be only a comparatively short time before the demand for small tracts will be so great that the owners of the larger tracts will probably be induced to subdivide and sell them. It is reasonable to believe that Armour & Company is not holding its lands for agricultural purposes, but that it is holding them either for the industrial purposes for which it is organized or for an increased selling price.

It must be obvious that a new community of this sort springing up all over such an area needs zoning, policing, water, sewers, lights, and all the municipal facilities usually furnished by village government.

The village was incorporated under § 412.02, which reads:

"Any district, section, or parts of sections not in any incorporated village, and in the state, which has been platted into lots and blocks, also the lands adjacent thereto, when the plat has been duly and legally certified according to the laws of this state, and filed in the office of the register of deeds for the county in which the lands, or the larger portion thereof, lie, the territory containing a resident population of not more than 10,000, nor less than 100, may become incorporated as a village in the manner hereinafter prescribed. The unplatted part of the territory must adjoin the platted portions and be so conditioned as properly to be subjected to village government. Any village, whose incorporation shall be declared void by judgment of court, may reincorporate under this chapter, notwithstanding the fact that such village does not contain 100 inhabitants; and, in such reincorporation, may include all or part of the territory embraced in the original incorporation; provided, that any district, section, or parts of sections, which has been platted into lots and blocks and which is contiguous to the state line and having a population of not less than 50, may, upon a petition of not less than ten voters, residents therein, become incorporated as a village in the manner hereinafter prescribed."

No better definition of a "village" or the fundamental requirements of one under the statute can be found than that in State ex rel. Childs v. Minnetonka Village, 57 Minn. 526, 533, 59 N. W. 972, 974, 25 L. R. A. 755, where Mr. Justice Mitchell, speaking for the court, said:

"A 'village' means an assemblage of houses, less than a town or city, but nevertheless urban or semiurban in its character; and the object of the law was to give these aggregations of people in a comparatively small territory greater powers of self-government and of enacting police regulations than are given to rural communities under the township laws. The law evidently contemplates, as a fundamental condition to a village organization, a compact center or nucleus of population on platted lands; and, in view of the expressed purposes of the act, it is also clear that by the term 'lands adjacent thereto' is meant only those lands lying so near and in such close proximity to the platted portion as to be suburban in their character, and to have some unity of interest with the platted portion in the maintenance of a village government. It was never designed that remote territory, having no natural connection with the village, and no adaptability to village purposes, should be included."

It has been consistently adhered to in our subsequent cases. State ex rel. Burnquist v. Village of Leetonia, 210 Minn. 404, 410, 298 N. W. 717, 720; State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 372, 206 N. W. 455, 456; State ex rel. Hilton v. City of Nashwauk, 151 Minn. 534, 544, 186 N. W. 694, 189 N. W. 592, 593.[3]

Here, the only real questions are whether the area included in the village meets the requirements of the statute to the effect that the unplatted part of the territory must adjoin the platted portions and

[3]See, State ex rel. Burnquist v. Village of North Pole, 213 Minn. 297, 6 N. W. (2d) 458; State ex rel. Smith v. Village of Gilbert, 127 Minn. 452, 149 N. W. 951; State ex rel. Simpson v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539; State ex rel. Young v. Village of Gilbert, 107 Minn. 364, 120 N. W. 528.

that it be so conditioned as properly to be subjected to village government. The unplatted lands in fact do adjoin the platted portions. Under our decisions, they are suitable for village government. State ex rel. Hilton v. Village of Kinney, 146 Minn. 311, 178 N. W. 815; State ex rel. Simpson v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539. As said in State ex rel. Simpson v. Village of Alice, 112 Minn. 330, 332, 127 N. W. 1118:

"* * * The final test is whether the platted territory and the adjacent territory are so limited in area and have such a natural connection, and the people residing thereon have such a community of interest, that the whole may be properly subjected to village government."

We think that, as the referee found, the whole area included in the village, both platted and unplatted, have such a community of interest that the whole may properly be subjected to village government.

It is no objection that the village has no established business center. A nucleus of dwellings only is essential. State ex rel. Childs v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755, *supra.* We can see no good reason why people who think that a community without commercial enterprises is conducive to good living should not have the right to establish such a place in which to live. The statute does not expressly require a "business" nucleus. Absent such a statutory provision, the court should not supply one. We think that a "business" nucleus is not essential. In Re: Petition of Boro. of Churchill, 111 Pa. Sup. Ct. 380, 170 A. 319. In the cited case, where a village is defined in almost the same language as that used in the Childs case, *supra,* the question was considered at length.

Our conclusion is that the village was legally incorporated. In coming to this conclusion we have not invoked the aid of the rule of State ex rel. Town of Stuntz v. City of Chisholm, 199 Minn. 403, 273 N. W. 235, that a referee's findings have the effect of a special verdict of a jury.

■ Relator contends that the referee erred in receiving testimony of persons who prepared exhibits showing the names and occupations of persons living in the village, to the effect that in some instances the information concerning the occupations was hearsay— that someone had told the witness what the occupation was. The testimony, other than the alleged hearsay, was all to the effect that the occupations of the inhabitants claimed to be urban in fact were such. We do not stop to consider whether the objection is otherwise tenable. Under the circumstances, no possible prejudice could have resulted. The evidence showed that the area as a whole was a suburban one. Except in the case of the farms, which do not come under the objection because of the fact that the alleged hearsay did not relate to them, all the land holdings are small. It is obvious that the persons living on them did not derive their living from working them. The inference is inescapable that they worked at some occupation away from their lands in order to make a living. The hearsay, if such it was, related to what was obvious anyway.

Motion for new trial denied and writ of quo warranto discharged.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the belief that the prerequisites for the incorporation of a village as outlined by this court in State ex rel. Hilton v. So-called "Village of Minnewashta," 165 Minn. 369, 206 N. W. 455, and State ex rel. Burnquist v. Village of North Pole, 213 Minn. 297, 6 N. W. (2d) 458, are not present here, and that the evidence does not sustain a finding of "a compact center or nucleus of population on platted lands" prescribed as a fundamental condition to village organization in State ex rel. Childs v. Minnetonka Village, 57 Minn. 526, 533, 59 N. W. 972, 974, 25 L. R. A. 755.

The area sought to be incorporated here constitutes 1,086 acres, of which only 188.18 acres (exclusive of roads and highways) have been platted into lots and blocks. In the platted portions, the houses, for the most part, are widely scattered. Nearly all of the unplatted land, and some of the platted land, is used for agricultural purposes. There is no nucleus of business buildings in the area, and,

as the referee stated, the "few scattered business enterprises * * * do nothing to give coherence to the area."

The closest approach to a nucleus of resident population is a small tract known as Bonnie View Heights, near Stinson Boulevard. It is remote from the property east of Silver Lake Road and could scarcely be regarded as the population nucleus of all the wide territory sought to be incorporated in the proposed village.

"Nucleus of population" as defined by this court would seem to contemplate something more than the community of interest found here by the referee. Rather, it must mean residences in some more or less compact urban center, with commercial establishments in close proximity supplying their trade requirements and making the whole a more or less self-sufficient community. It should give coherence to the area sought to be incorporated, and community of interest alone is not a sufficient substitute for such nucleus.

The facts here presented would seem to bring this case well within the principles of State ex rel. Hilton v. So-called "Village of Minne-washta," 165 Minn. 369, 372, 206 N. W. 455, 456, *supra,* where this court stated:

"* * * The territory is not rendered otherwise than agricultural by reason of the fact that many of the homes are those of Minneapolis business and professional men. The fact that a goodly number of the occupants of the homes in the proposed village are really Minneapolitans does not change the character of their country homes and agricultural activities from rural to urban.

"The respondents have deliberately and frankly refrained from any final or binding choice of any one location having the characteristics of 'a compact center or nucleus of population on platted lands' which it was held in State [ex rel. Childs] v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755, is 'a fundamental condition to a village organization.' But if we pass that notable defect in respondent's case, we still have an insurmountable obstacle to its success. *For the purposes of village organization and government, there is little if any natural connection or community of interest be-*

*tween any considerable portion of the community and any of its supposed nuclei of population.* [Italics supplied.]

"Finally, the whole area is so exclusively agricultural and rural, so obviously and wholly otherwise than urban in character, that it has not adaptability for village purposes and is not so conditioned as to be subjected to village government."

For the reasons outlined, I am unable to concur in the opinion of the majority.

MR. CHIEF JUSTICE LORING and MR. JUSTICE JULIUS J. OLSON took no part in the consideration or decision of this case.